# TEXAS & PACIFIC RAILWAY COMPANY *v.* SWEAR-INGEN.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 48. Submitted November 3, 1904.—Decided December 19, 1904.

An employé is entitled to assume that his employer has used due care to provide reasonably safe appliances for the doing of his work. Knowledge of the increased hazard resulting from the negligent location in dangerous proximity to a railroad track of a structure will not be imputed to an employé, using ordinary diligence to avoid it if properly located, because he was aware of its existence and general location. It is for the jury to determine from all the evidence whether he had actual knowledge of the danger.

THE facts are stated in the opinion.

*Mr. John F. Dillon, Mr. D. D. Duncan* and *Mr. T. J. Freeman* for plaintiff in error:

In every case before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed. *Improvement Co.* v. *Munson,* 14 Wall. 448; *Commissioners &c.* v. *Clark,* 94 U. S. 278, 284; *Pleasants* v. *Fant,* 22 Wall. 120; *Randall* v. *B. & O. Ry. Co.,* 109 U. S. 482; *Railway Co.* v. *Converse,* 139 U. S. 469; *Schofield* v. *C., M. & St. P. Ry. Co.,* 114 U. S. 615; *Steamship Co.* v. *Merchant,* 133 U. S. 375.

When a servant enters into the employment of another he assumes all the risks ordinarily incident to the business. He is presumed to have contracted in reference to all the hazards and risks ordinarily incident to the employment; consequently he cannot recover for injuries resulting to him therefrom.

The servant takes the risks of the master's mode of con-

ducting his business, though a safer one might be followed, if the servant fully knows the risk and continues to work.

There are risks and dangers incident to most employments, those risks the parties have in view when engagements for services are made, and in consideration of which the rate of compensation is fixed. In all engagements of this character the servant assumes those risks that are incident to the service, and as between himself and the master he is supposed to have contracted on those terms, and if an injury is sustained by the servant in that service, it is regarded as an accident, and the misfortune must rest on him. Woods' Master & Servant, 2d ed. § 326; 3 Woods' Railway Law, § 370, p. 1452; 14 Am. & Eng. Ency. of Law, 843, 845; *Tex. & Pac. Ry. Co.* v. *Minnick,* 57 Fed. Rep. 362; *Tuttle* v. *Railway,* 122 U. S. 189; *Randall* v. *Railway,* 109 U. S. 478; *H. & T. C. Ry. Co.* v. *Conrad,* 62 Texas, 627; *Woodworth* v. *St. P., M. & M. Ry. Co.,* 18 Fed. Rep. 282; *Mo. Pac. Ry. Co.* v. *Summers,* 71 Texas, 700; *Green* v. *Cross & Eddy, Receivers,* 79 Texas, 130; *Naylor* v. *Railway Co.,* 5 Am. & Eng. R. R. Cases, 406; *Wonder* v. *Baltimore Ry. Co.,* 32 Maryland, 411; *Crilly* v. *Texas & Pac. Ry. Co.,* 53 Am. & Eng. R. R. Cases, 104; *Kohn* v. *McNulty, Receiver,* 147 U. S. 238.

When the proof establishes a usage or custom, the presumption is that the employé contracted with regard to said usage or custom, and if he seeks to avoid its force and effect, the burden is upon him to show that its existence had been concealed from him by the company, and that he did not know of same, nor could have known of same, by the use of ordinary diligence. *Watson* v. *Railway Co.,* 58 Texas, 438; *St. Louis & S. W.* v. *Spivey,* 73 S. W. Rep. 973.

It is the duty of the master to advise the servant, or to inform him, of the dangers incident to the employment, if the servant is ignorant of them. If the dangers are obvious and patent, and the servant advises himself, of course the duty of being advised by the master would not be imposed. *Gulf, Colo. & S. Fé Ry. Co.* v. *Darby,* 57 S. W. Rep. 446.

*Mr. Leigh Clark* for defendant in error, cited *Cent. Trust Co.* v. *E. T. V. & G. Ry. Co.*, 73 Fed. Rep. 661; *Tex. & Pac. Ry. Co.* v. *Archibald*, 170 U. S. 674; *George* v. *Clark*, 85 Fed. Rep. 607; *Gulf, Colo. & S. Fé Ry. Co.* v. *Darby*, 67 S. W. Rep. (Texas) 446; *G., H. & S. A. Ry. Co.* v. *Mortson*, 71 S. W. Rep. (Texas) 707; *Grand Trunk Ry. Co.* v. *Ives*, 144 U. S. 408, 417; *Gardner* v. *Mich. Cent. Ry. Co.*, 150 U. S. 349, 361; *Richmond & D. Ry. Co.* v. *Powers*, 149 U. S. 44; *Mo. Pac. Ry. Co.* v. *Everett*, 161 U. S. 451.

MR. JUSTICE WHITE delivered the opinion of the court.

This suit was commenced in a state court by W. W. Swearingen, the defendant in error, and, on the application of the defendant, the Texas and Pacific Railway Company, was removed to the Circuit Court of the United States as one arising under the laws of the United States, because the railway company was chartered under an act of Congress.

The action was to recover damages for personal injuries sustained by reason of the alleged negligence of the defendant company, in whose service at the time of the injury the plaintiff was employed as a switchman. The negligence alleged on the part of the company was the existence, in close proximity to a switch track, of a scale box, by striking against which the plaintiff was injured whilst doing duty as a switchman. In addition to a general denial the railway company specially pleaded that the scale box in question was at a safe distance from the track on which the plaintiff was hurt when working and, moreover, that the plaintiff had assumed the risk, if any, arising from the situation of the scale box, and had in any event been guilty of contributory negligence. There was a verdict and judgment for the plaintiff, and an affirmance of such judgment by the Court of Appeals. 122 Fed. Rep. 193.

The assignments of error are based, first, on a ruling of the trial court in rejecting evidence; second, on the refusal to direct a verdict; and, third, on an exception taken to the charge

given to the jury. To pass upon them requires an appreciation of the proof, and, therefore, before coming to consider the assignments, we summarize the testimony.

The accident occurred after dark on the evening of February 7, 1902, in the switch yard at El Paso. It was shown that in that yard there were several tracks. One track, No. 1, ran over the bed of the scales in question. On the right of this scale there was what was called a scale box, which rose to about the height of six feet, and was about five feet wide and eighteen inches deep. On the other side of this structure there was a track described as track No. 2, and beyond this, to the right, were two other tracks, known respectively as track No. 3 and track No. 4. The space between a ladder on the side of a freight car when moving on track No. 2 and the scale box in question was shown by the evidence to be only 19½ inches.

The plaintiff testified concerning the accident as follows:

"I was hurt on the evening of the 7th of February, 1902, while working as a switchman after dark, at about 6 o'clock and 45 minutes.

"I was a day switchman, but we worked until after dark.

"My duties as a switchman were to assist in the moving, placing and switching of cars, coupling and uncoupling them, and making up trains, and generally to obey the order of Yardmaster Moore, under whom we were working, and my duties also required me to ride on the cars while they were being moved.

"On this night we were making up a transfer to take to the Southern Pacific Railway, and the cars we had to get were on No. 2 track. My station was with the engine, called 'following the engine.' I worked up near the engine.

"The engine was at the west end of the yard, west of track No. 2, with me with it, and it backed down east into No. 2 track, with me riding on the footboard at the east end of the engine, to get these cars, and we passed the scale box, although I did not see it, and reaching the cars I coupled the engine to them, and not getting a signal from the yardmaster, who was still

farther east of me, as was also the other switchman, Williams, I walked east down the string of cars about two car lengths, and getting the signal I passed the same to the engineer, and the engine and cars started up again going west so as to go out on another track, and as the cars started I got up on a box car to ride down past the switch at the west end of track No. 2, so as to throw the switch and let the train on another track.

·"There is a ladder on the side of a box car, and a step called a stirrup under the ladder under the bottom of the car, and I was holding on to the ladder with my hands (illustrating by holding his hands above his head as if climbing a ladder), and my lantern was hanging on my right arm, and I was looking back east for a signal from the yardmaster, as it is my duty to do.  I do not know whether he wanted to give one or not, but it is my duty to be on the lookout, although I do not have to look in his direction all the time, when my right shoulder struck the scale box, and I fell down between the scale box and the cars, and I was dragged and badly injured.  We had probably eight or ten cars at the time, and I was riding properly and hanging out a little from the car, which is proper, and I was on the north side of the car, which is also proper, so as to signal the engineer."

The employé who built the scales testified as follows:

"It is my business to know how much a car passing on a side track will clear the scale box, and these tracks at this place are standard gauge apart, and the scale box is standard, and as I had to put the scale box there to facilitate business and for convenience, I had no more room because the lever of the scale is a certain length to get the fulcrum.  The tracks are standard, and are not farther apart, because there is no more room to put them farther apart.

\*    \*    \*    \*    \*    \*    \*    \*

"The distance that I put this scale box from track No. 2 is standard, and is considered a safe and proper distance in putting in scales where the tracks are standard guage apart.

\*    \*    \*    \*    \*    \*    \*    \*

"I am bound to put my scales in according to the length of the lever, and if tracks are already there and are standard distance apart I have a uniform and standard distance from the tracks.

"We have side tracks at most places on each side of the scales. The tracks in this yard are standard guage apart, and where ground is scarce we have to economize in space, but where ground is plenty the tracks can be farther apart."

The evidence for the company also showed that the scales in question had been erected a number of years prior to the happening of the accident and after tracks Nos. 1 and 2 were built. The superintendent of terminals of the defendant company testified that "south of track No. 4 there is a space left for four or five more tracks." The same witness also stated that the customary position of a switchman while riding on a car and ladder "is to swing out from the car with his body," and that "a well-developed man cannot safely pass by the scale box on track No. 2, while riding on a side of a car on the ladder, if he hangs out from the car."

There was evidence that at other yards than the one in question the distances from the side of a standard box car to adjoining scale boxes varied from sixteen inches to one hundred and sixty-eight inches.

Testimony was introduced tending to show that the plaintiff, before he was hurt, knew of the proximity of the scale box to track No. 2. Concerning his employment and knowledge of the location of the scales, plaintiff testified that he had made one trip as extra brakeman in the service of the railway company in January, 1900; that in December, 1901, as brakeman, he made about one trip between El Paso and Toyah; that he had worked in the El Paso yards, as extra switchman, two nights and three days in January, 1902, and went to work there regularly as switchman on February 1, 1902. He denied any recollection of ever having worked on track No. 2 during his employment in January, 1902, and, referring to his employment in the early days of February, 1902, plaintiff says:

"During the seven days I worked for defendant we never used this No. 2 track at the west end, or near the scales, and I never saw a car on track No. 2, opposite the scales, and never had my attention called to the distance between the track and scale box. I never measured or approximated the distance to it. Nothing ever occurred to attract my attention to it.

\*   \*   \*   \*   \*   \*   \*   \*

"I knew we had to pass the scale box at the time I was hurt, so as to get to the switch beyond, but I was not thinking about it, and I did not see it when we passed it going in after these cars.

"The switch engine had a headlight lighted at both ends, and I was on the footboard at the rear of the engine, which put me in front while we were backing into track No. 2 after the cars, but the headlights were not very clean or bright.

"There was nothing to hide the scale box from my view; it was perfectly open and apparent."

Plaintiff further testified:

"I knew the location of the scale before I was hurt. I knew it was between tracks Nos. 1 and 2, but I did not know anything with reference to its proximity to track No. 2, and did not know it was dangerously close to track No. 2.

"At the time I was hurt I had no knowledge of the distance between the scale box and No. 2 track.

"I set cars on the scale on track No. 1 to be weighed, but I would be on the north side of the cars on track No. 1, and as the scale box is on the south side I could not see it. I had nothing to do with the scale box and had no business around it.

"I first learned the exact distance between the scale box and the nearest rail of track No. 2 a few days ago, when I went down and measured it at your (referring to plaintiff's attorney) recommendation.

"I was never warned about the danger of getting knocked off of cars by this scale box, and at the time I was hurt I

was attending to my work, and thinking about my duties, and looking for a signal from the yardmaster, and was not thinking about the box. I did not see it immediately prior to the time I struck it.

" The scale box was at the same place, when I struck it, as it was when I first went to work for defendant."

The evidence was closed by the offer on behalf of the company of portions of a written application by plaintiff for employment as brakeman, dated February 22, 1900. After stating that the plaintiff identified the application, the bill of exceptions recites as follows:

" Defendant then offered in evidence the following portions of said application, consisting of questions and the answers thereto written by the plaintiff, for the purpose of showing that plaintiff had notice of the location of said track scale box, and that he was in danger of being knocked off of a car when passing the same:

" Question. ' Do you make this application for employment in train service, realizing the hazardous nature of such employment, understanding that it is necessary in operating this railway for the company to have overhead and truss bridges at certain points on the line; also coal chutes, track scale boxes, water tanks, coal houses, platforms, sheds, roofs and other overhead and side structures, and that in performance of the duties for which you are employed you are liable to receive injuries by being knocked off the side or top of cars, unless you use due care to avoid injury thereby? '

" Answer. ' Yes.'

" Question. ' Do you agree to acquaint yourself with the location of all overhead and truss bridges, as well as the location of all other structures along the line of the road? '

" Answer. ' Yes.'

" Question. ' Do you understand that no officer or employé of this company is authorized to request or require you to use defective tracks, cars, machinery or appliances of any kind, and that when you do so you assume all risk of injury therefrom? '

"Answer. 'Yes.'

"Question. 'Do you understand that this company desires to employ only experienced men in the service, and does not undertake to educate inexperienced men?'

"Answer. 'Yes.'

"Counsel for plaintiff objected to the said testimony for the reason that it was irrelevant and immaterial, and that plaintiff had made this application and entered the employ of defendant, and afterwards resigned, and again entered the employ of the defendant some two years later, without making another application, and also because it was an effort on the part of defendant to limit its liability for its own negligence, and void as against public policy, and because the particular location of this track scale box is not given; and the court having sustained plaintiff's objections and excluded said testimony, the defendant then and there excepted to the action of the court in excluding said evidence, and tenders this, its bill of exceptions, which is allowed, signed and sealed by the court."

The first assignment of error assails the affirmance by the Court of Appeals of the action of the trial court in refusing to receive in evidence the matter just referred to.

These excerpts were offered in evidence, as stated in the bill of exceptions, "for the purpose of showing that plaintiff had notice of the location of said track scale box, and that he was in danger of being knocked off a car when passing the same."

The application was made in February, 1900, and was for employment, not as switchman, but as brakeman. The employment of the plaintiff with the defendant company following the application was in December, 1901, when the plaintiff as a brakeman made about a dozen trips between El Paso and a place called Toyah. His subsequent employment as switchman commenced but a short time before the happening in February, 1902, of the accident complained of.

We think the trial court rightly excluded the offered evidence. In the first place, the defendant had testified that

before the accident he had knowledge of the existence of the scale box.  In the next place, while undoubtedly the statements in the application tended to show that the plaintiff was aware of the generally hazardous nature of the employment and the necessity of the exercise of care in working with and about the instrumentalities employed by the company in the operation of its railroad, the recognition of these facts by the plaintiff and his agreement to acquaint himself with the location of bridges and other structures on the line of the road did not tend to establish notice, communicated to the plaintiff, that the defendant company had not exercised due care in placing scales or scale boxes on its tracks, or that the company had by its negligence increased the ordinary hazards to be expected from the use of such structures, and that by the exercise of ordinary care on his part plaintiff could not escape injury.  The evidence was, therefore, immaterial in the light of the issue upon which the jury had to pass.

At the close of all the evidence the defendant company requested the court to charge the jury to return a verdict for the defendant, and to the overruling of such motion the defendant company duly excepted.  The second assignment alleges error in the affirmance by the Court of Appeals of the action of the trial court denying this motion.

The right to have the jury instructed to find for the company was based upon the following contentions:

"*a.* Because the undisputed evidence established that said track scale box erected in the defendant's yard, and under the circumstances in a reasonably safe place, and at a reasonably safe distance and location from track No. 2, on which track plaintiff was riding at the time he was injured.

"*b.* Because plaintiff testified he knew of the location of the track scale box and the location of track No. 2, with reference to said track scale box, on which track No. 2 he was riding at the time he was hurt, and because the undisputed evidence shows that the track scale box and the danger of the same was open and obvious to the view of plaintiff, and that neither

the track scale box nor the dangers thereof were hidden or latent, and plaintiff was presumed to know the danger and assumed the risks thereof.

"*c.* Because the uncontroverted testimony established the fact that plaintiff knew of the location of the track scale box, and location of said track No. 2, with reference to said track scale box, on which track he was riding at the time he was hurt, and that the track scale box, and the dangers of the same, were open and obvious to the view of plaintiff, and not hidden or latent, and plaintiff was presumed to know the danger and assumed the risk."

The motion was properly overruled. So far from it being the fact, as asserted, that the evidence established indisputably the existence of the grounds upon which the motion was based, the record shows that there was evidence tending to establish that the track scale box was not erected in a reasonably safe place, and that, although the plaintiff knew that the scale box was situated adjacent to track No. 2, he did not know that it was so near that it could not be passed, in the performance of his duties as a switchman, without danger. This is apparent when it is borne in mind that the plaintiff testified, in substance, that prior to the accident he had not closely inspected the scale box or taken measurements of the distance from the box to the north rail of track No. 2, and that he did not do more than cursorily observe the structure from a distance, and that he was unaware of the nearness of the scale box to the north rail of track No. 2.

*Prima facie,* the location of scales where the tracks were only the standard distance apart, and where a space of less than two feet was left for the movements of a switchman between the side of a freight car and the scale box, encumbered, as he would be in the night time, with a lantern employed for the purpose of signalling, did not incontestably establish the performance by the defendant company of the duty imposed upon it to use due care to provide a reasonably safe place for the use of the switchmen in its employ. And so far from the

proof making it certain that the necessity of the situation required the erection of the structure between tracks Nos. 1 and 2 as existing, there was proof that the railway company owned unoccupied ground, intended for other tracks, to the south of track No. 4, justifying the inference that the distance between tracks Nos. 1 and 2 might have been increased, and the employment of the scales thus rendered less hazardous to switchmen, or that the scales might have been removed to a safer location.

It was, therefore, properly a question for the determination of the jury whether or not the scales were maintained in a reasonably safe place, and if not, whether the plaintiff had notice thereof. The Court of Appeals was of opinion, and rightly we think, that the dangerous contiguity of the scale box to track No. 2, and the extra hazard to switchmen resulting therefrom, was not so open and obvious on other than a close inspection, as to justify taking from the jury the determination of the question whether there had been an assumption of the risk. The plaintiff was entitled to assume that the defendant company had used due care to provide a reasonably safe place for the doing by him of the work for which he had been employed, and as the fact that the defendant company might not have performed such duty in respect to the scale box in question was not so patent as to be readily observable, the court could not declare, in view of the testimony of the plaintiff as to his actual want of knowledge of the danger, that he had assumed the hazard incident to the actual situation. *Choctaw, O. & G. R. R.* v. *McDade*, 191 U. S. 64, 68.

The remaining assignment of error questions the correctness of the following portion of the charge to the jury:

"The defendant claims that the plaintiff knew of the existence and location of the scale box with which he came in contact, and that by continuing in the work, with such knowledge, he assumed all risks incident to and arising out of his employment. Upon this point you are instructed that if you believe

from the testimony that prior to the plaintiff's injuries he knew of the existence and location of the scale box, and of the danger incident to the discharge of his duties while passing the same on a moving train, if danger there was; or, if knowing of the location of the structure, the danger to the employés while in the usual discharge of their duties was apparent, that is open to observation, then you are instructed that the plaintiff, by continuing in the employment of the defendant without complaint, assumed such risks, and he would not, therefore, be entitled to recover. In this connection you are further instructed that the mere fact that the plaintiff knew of the existence and location of the scale box would not, as a matter of law, charge him with knowledge of the danger, if such danger there was, due to its proximity to the north rail of track No. 2, and whether he knew of the danger is a question of fact for you to determine from a consideration of all the facts and circumstances in evidence."

The grounds of the objection to the charge being thus stated:

"Because the proof showed that plaintiff knew of the location of the track scale box, and of track No. 2, on which he was riding at the time he was hurt, in reference to a scale box, and that the same and the location thereof was open and obvious to plaintiff's view, and being an experienced brakeman, he was charged with notice that riding on the cars as he did was dangerous, and he assumed the risks thereof, and the court should have so charged the jury."

This assignment but reiterates contentions made in connection with the assignment based on the alleged error in overruling the motion for judgment. As we have already decided that knowledge of the increased hazard resulting from the dangerous proximity of the scale box to the north rail of track No. 2 could not be imputed to the plaintiff simply because he was aware of the existence and general location of the scale box, it was for the jury to determine, from a consideration of all the facts and circumstances in evidence, whether plaintiff had actual knowledge of the danger.

We find no error in the judgment of the Circuit Court of Appeals, and it is

*Affirmed.*