## CARTER v. McDERMOTT.[*]

MASTER AND SERVANT; NEGLIGENCE; POLICE REGULATIONS, EXTRATERRITORIAL EFFECT OF; STREET RAILWAYS; FELLOW SERVANTS; CARRIERS.

1. While a master is not liable to his servant for injuries resulting from the ordinary risks of his employment, he is liable for injuries result-

---

[*]*Conflict of laws—Torts.*—As to what laws govern the various questions arising in an action instituted in a jurisdiction foreign to the one in which the wrongful acts occurred, see a discussion of the American and English authorities in editorial note to Boston & M. R. Co. v. Hurd, 56 L.R.A. 193.

ing from failure to exercise reasonable care in the selection of his servants, or in providing safe machinery, appliances, and equipment, and keeping them in proper repair.

2. A police regulation of this District has no extraterritorial effect, but such a regulation providing that every street car in motion after sundown shall have a light displayed at each end may be considered by the court in an action here for personal injuries resulting from a rear-end collision of electric cars in Maryland, on a railway line extending from this District into that State, in determining the measure of the defendant's responsibility.

3. In an action in this District to recover damages for personal injuries received in Maryland, the right of the plaintiff to recover must be governed by the *lex loci*, and not by the *lex fori*.

4. Under the common law in force in Maryland, the safety of those in charge of electric cars and of passengers requires such cars while in motion after dark to be equipped with a light at each end.

5. Where the motorman of an electric car is injured at night in a rear-end collision caused by the failure of the car ahead of him to be provided with an end light, the conductor of that car having neglected to equip his car with a lamp, the fact that the company provided lamps and placed them on the sidewalk near its barns so that the conductors might place them on the cars at night, and the knowledge of the injured man of such custom, will not absolve the company from liability for such injuries,—especially where it does not appear that it was impracticable to have such lamps on the cars when they left the barn.

6. Common carriers of passengers should be held to a very strict accountability for any dereliction of legal duty which increases the hazards and dangers of travel.

7. A servant is not obliged to pass judgment on his master's method of transacting his business, but may assume that reasonable care will be used in furnishing appliances necessary for its operation.

No. 1712. Submitted December 12, 1906. Decided March 5, 1907.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia upon a special verdict in an action to recover damages for personal injuries.

*Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment of the supreme court of the District of Columbia in favor of the defendant, Allan L.

McDermott, receiver of the City & Suburban Railway Company of Washington, appellee here, upon a special verdict of the jury. Suit was brought by appellant, William J. Carter, to recover damages for injuries sustained the evening of December 12, 1903, by reason of an electric car upon which he was acting as motorman running into another car which was standing on the track near the town of Hyattsville, in the State of Maryland.

At the time of the accident the City & Suburban Railway Company of Washington operated a line of electric railway, one branch of which extended from the corner of 15th and G streets, N. W., in the city of Washington, to the company's car barn at 4th and T streets, N. E., in this city, and thence through Hyattsville, in the State of Maryland, to Riverdale, in that State. On the day of the accident, Carter, being then in the employ of the company as a motorman, left 15th and G streets with his car about 5 o'clock P. M., and proceeded to 4th and T streets, at which place the current was changed from the underground to the overhead system. His conductor at that point procured a red light in the form of a lamp or lantern, which the company had provided on the sidewalk for that purpose, and placed the same in position on the rear of the car to prevent a rear-end collision. The car then proceeded to Riverdale. Another car, No. 409, in charge of a conductor named Shaffer, left 15th and G streets shortly after the departure of Carter's car, and traversed the same route. When this car reached 4th and T streets, its conductor Shaffer forgot to equip it with a red lamp, although there was one on the sidewalk which he might have taken. Car No. 409 proceeded to Riverdale, reaching there before Carter's car had left. Inasmuch as car No. 409 was to be turned in at the end of that trip, it was given the right of way over Carter's and consequently preceded him on the return trip. The car had proceeded but a comparatively short distance when the trolley pole jumped or flew off the wire, and in so doing hit against one of the cross irons which were suspended over the track at uniform distances, causing the trolley pole to rebound, which in turn caused the rope attached thereto to be taken up in the trolley box, and

there held fast. The current being thus interrupted or disconnected, the car was immediately in darkness. Conductor Shaffer caused it to be stopped, and at once applied himself to the task of releasing the rope from the trolley box. While thus engaged, Carter's car, upon which there were passengers, came along, and, owing to the darkness and absence of a light on the rear of car No. 409, Carter did not see that car in time to avoid a collision, although he did manage to reverse the power on his car before the impact. The evidence tended to show that the accident would not have occurred if car No. 409 had been properly provided with a rear-end light. Carter sustained severe injuries, and brought this suit to recover therefor.

The court at the trial, without objection, submitted a series of questions to be answered by the jury, to which the jury responded as follows:

"Now again come here the parties aforesaid, in manner aforesaid, and the same jury return into court, and on their oath say they find the issue herein joined in favor of the plaintiff and assess his damages, by reason of the premises, at twenty-five hundred dollars ($2,500), if the court shall be of the opinion that he ought to recover against the defendant upon the facts submitted to us upon the trial, which facts were as follows:

"1. We find that, for the safety of motormen, ordinary care did require the defendant to maintain a rear light upon car No. 409 while upon its way from Riverdale to the District line on the occasion of the accident.

"2. We find that upon the occasion of the accident the defendant did provide upon the curb at 4th and T streets a rear light for car No. 409.

"3. We find that a rule of the company required Shaffer to place said light in position upon the car.

"4. We find that said light was not omitted through his fault alone.

"5. We find that when car No. 409 left Riverdale to return to Washington, Carter did not know that it carried no rear light.

"6. We find that after he left Riverdale Carter was not negligent in failing to look out for car No. 409.

"7. We find that Carter was not negligent in a manner that directly contributed to his injury.

"But upon these facts, if it shall be the opinion of the court that the plaintiff ought not to recover against the defendant, then we find in favor of the defendant."

On motion of appellee the court set aside the fourth finding as being unnecessary and a conclusion of law, and entered judgment for the defendant.

[The further material facts will be found stated in the opinion.—Reporter.]

*Mr. Mason N. Richardson* and *Mr. Charles H. Merrillat* for the appellant.

*Mr. Charles A. Douglas, Mr. George P. Hoover,* and *Mr. E. B. Sherrill,* for the appellee:

1. The jury found that ordinary care required the presence of lights on the rear of Shaffer's car on the occasion of the accident; but they also found that the defendant had furnished these lights to Shaffer, and required him by its rule to place them in position on the car. The lights were omitted through Shaffer's fault, and Shaffer being a fellow servant of the plaintiff (*Oakes v. Mase,* 165 U. S. 363; *R. R. Co. v. Poirier,* 167 U. S. 49), the defendant company was not liable to the latter for any resulting injuries, unless it can be said to be the law that it was not only defendant's duty to supply the lights to Shaffer, but also to see that they were actually installed in position on the car. No case can be found which goes that far.

The duty of the master to use ordinary care to furnish his servants with safe and proper machinery and appliances is not denied, nor is it sought to controvert the proposition that this is an absolute duty which cannot be delegated. But this rule extends no farther than to require the master to furnish and provide the appliances to the hand of the servant who is to use them. The duty to furnish and provide is upon the master, and

is absolute; but the duty to use and operate is upon the servant, and if he fails to use, or uses negligently, the master is not liable to him or to his coservants for resulting injuries. The distinction is clear, and is settled by the authorities. The defendant had discharged its full duty to its employees when it furnished the lamps to Shaffer, and said to him, in effect, "Place them in position on your car;" and it was not required to go further and see that the lamps were actually installed. If the law were otherwise, then a master never could relieve himself from responsibility to his servants for an accident occasioned by the absence of any detachable appliance which he had furnished, but he would be required to be always present to see that such appliances were always in place and in operation. Such a rule is not supported by commonsense or by reason, and has no sanction in the authorities. *Kaare* v. *Steel & Iron Co.* 139 N. Y. 369; *Hall* v. *United States Radiator Co.* 64 N. Y. Supp. 1002; *Mellen* v. *Wilson Sons & Co.* 159 Mass. 88; *R. R. Co.* v. *Wachter,* 60 Md. 395; *Collins* v. *R. R. Co.* 30 Minn. 31; *Browne* v. *Siegel-Cooper & Co.* 191 Ill. 226; *M'Carthy* v. *Bristol Shipowners' Co.* Ir. L. R. 10 C. L. 384; *Byrne* v. *Fennel,* Ir. L. R. 10 C. L. 397; *Hutton* v. *Contracting Co.* 139 Fed. 734; *Kelly* v. *New Haven S. B. Co.* 74 Conn. 343, 57 L. R. A. 494; *Flynn* v. *Maine S. S. Co.* 35 N. Y. Supp. 1031; *Whittlesey* v. *R. R. Co.* (Conn.) 36 A. & E. R. R. Cases, 104; *Miller* v. *R. R. Co.* 175 Mass. 363; *Thyng* v. *R. R. Co.* 156 Mass. 13; *Trimble* v. *Machine Works,* 172 Mass. 150; *Hames* v. *Sullivan,* 1 Ill. App. 251; *Hayes* v. *R. R. Co.* 187 Mass. 182; *Ganges* v. *R. R. Co.* (Mass.) 33 A. & E. R. R. 398; *Hamelin* v. *Malster,* 57 Md. 311; Bailey, Personal Injuries, sec. 23; *Car Works* v. *Schaefer,* 96 Md. 88; *Channon* v. *Sanford Co.* 70 Conn. 573; *Kimmer* v. *Webber,* 151 N. Y. 417; *Ross* v. *Walker,* 139 Pa. 42; *McLean* v. *Head & Dowst Co.* 71 N. H. 294; *Armour* v. *Hahn,* 111 U. S. 313; *Ludlow* v. *Groton Bridge & Mfg. Co.* 42 N. Y. Supp. 343; *Clark* v. *Ritter-Conley Co.* 57 N. Y. Supp. 755; *Harley* v. *Buffalo Car Mfg. Co.* 142 N. Y. 31; *Danes* v. *R. R. Co.* 98 Cal. 19; *R. R. Co.* v. *Petty,* 67 Miss. 255, 19 Am. St. Rep. 304; *R. R. Co.* v. *Charles,* 162 U. S. 363; *Jenkins* v.

*R. R. Co.* 39 S. C. 507; *Pleasants* v. *R. R. Co.* 121 N. C. 492; *Miller* v. *R. R. Co.* (N. J.) 31 A. & E. R. R. Cas. N. S. 639; *Moret* v. *Car Works,* 99 Md. 471; *Kemmerer* v. *Railway Co.* 81 Hun, 444.

2. Even assuming, for the sake of argument, that the defendant company in this case was charged with the non-delegable duty of equipping its cars with rear-end signal lanterns, it is submitted that the plaintiff Carter is, notwithstanding, not entitled to recover, because he was familiar with the custom and practice of the company, whereby it furnished these lanterns each day for the conductors on the curb at the corner of 4th and T streets, and required the conductors to place them in position on the cars, and by continuing in the defendant's employment, with knowledge of this practice and without protest, he assumed the risks of the negligence of the conductors in failing to install the lanterns on the cars. *Randall* v. *Railroad Co.* 109 U. S. 478; *Tuttle* v. *R. R. Co.* 122 U. S. 189; *Railroad Co.* v. *McDade,* 135 U. S. 554; *Kohn* v. *McNulty,* 147 U. S. 241; *Railroad Co.* v. *Seley,* 152 U. S. 142; *Railroad Co.* v. *Archibald,* 170 U. S. 665; *Railroad Co.* v. *McDade,* 191 U. S. 65; *Hayzel* v. *Railway Co.* 19 App. D. C. 370; *Butler* v. *Frazee,* 25 App. D. C. 392; *R. R. Co.* v. *Minnick,* 6 C. C. A. 387, 57 Fed. 362; *Myers* v. *R. R. Co.* 37 C. C. A. 137, 95 Fed. 406; *Allen* v. *R. R. Co.* 69 N. H. 271; *Ryan* v. *R. R. Co.* 51 Hun, 607; *R. R. Co.* v. *Holloway,* 52 C. C. A. 260, 114 Fed. 458; *Glenmont Lake Co.* v. *Rwy.* 61 C. C. A. 506, 126 Fed. 524; *Gowen* v. *Harley,* 6 C. C. A. 190, 56 Fed. 973; *Reed* v. *Stockmeyer,* 20 C. C. A. 381, 74 Fed. 186; *Oil Co.* v. *Grable,* 36 C. C. A. 94, 94 Fed. 73; *Dredging Co.* v. *Walls,* 28 C. C. A. 441, 84 Fed. 428; *Lindsay* v. *R. R. Co.* 50 C. C. A. 298, 112 Fed. 384; *Terry* v. *Schmidt,* 54 C. C. A. 83, 116 Fed. 627; *R. R. Co.* v. *Billingslea,* 54 C. C. A. 109, 116 Fed. 335; *Johnson* v. *R. R. Co.* 54 C. C. A. 508, 117 Fed. 462; *Kenney* v. *Meddaugh,* 55 C. C. A. 115, 118 Fed. 209; *St. Louis Cordage Co.* v. *Miller,* 61 C. C. A. 477, 126 Fed. 495; *Logging & Mfg. Co.* v. *Brown,* 61 C. C. A. 207, 126 Fed. 141; *Riley* v. *R. R. Co.* 66 C. C. A. 598, 133 Fed. 904; *R. R. Co.* v. *Robertson,* 71 C. C.

A. 335, 139 Fed. 519; *Monaghan* v. *R. R. Co.* 45 Hun, 113; *R. R. Co.* v. *Allen,* 99 Ala. 359; *Hammond* v. *R. R. Co.* 83 Mich. 334; *Goldthwait* v. *R. R. Co.* 160 Mass. 554; *Hogele* v. *Wilson,* 5 Wash. 160; *Simmons* v. *Railroad,* 11 Ill. App. 147; *Heath* v. *Coal Min. Co.* 65 Iowa, 737; *Cunningham* v. *R. R. Co.* 170 Mass. 298; *Box* v. *R. R. Co.* 107 Iowa, 660; *R. R. Co.* v. *Conrad,* 62 Tex. 627; *R. R. Co.* v. *Bradford,* 66 Tex. 732; *Railroad Co.* v. *Barry,* 28 C. C. A. 644, 84 Fed. 944; *R. R. Co.* v. *Voelker,* 65 C. C. A. 226, 129 Fed. 522; *Logging Co.* v. *Schneider,* 20 C. C. A. 390, 74 Fed. 195; *Railroad Co.* v. *Fishack,* 59 C. C. A. 269, 123 Fed. 465; *Red River Line* v. *Cheatham,* 9 C. C. A. 124, 60 Fed. 517; *O'Rorke* v. *R. R. Co.* 22 Fed. 189; *McGrath* v. *R. R. Co.* 14 R. I. 357, Affirmed in 15 R. I. 95; *Railroad Co.* v. *State,* 41 Md. 268; *Wolsey* v. *R. R. Co.* 33 Ohio St. 227; *Marean* v. *R. R. Co.* 167 Pa. 220; *Hawk* v. *R. R. Co.* (Pa.) 11 Atl. 459; *Kelly* v. *Railroad Co.* 53 Wis. 74; *Kuhns* v. *R. R. Co.* 70 Iowa, 561; *Mundo* v. *Hill Mfg. Co.* 86 Me. 400; *Caron* v. *Railroad Co.* 164 Mass. 523; *Railroal Co.* v. *Morrissey,* 45 Ill. App. 127; *Stafford* v. *R. R. Co.* 114 Ill. 244; *Naylor* v. *Railroad Co.* 53 Wis. 661; *Behn* v. *Armor,* 58 Wis. 1; *Scott* v. *Railroad Co.* 14 Or. 211; *R. R. Co.* v. *Puckett,* 42 Ill. App. 642; *Pa. Co.* v. *Backes,* 133 Ill. 255; *Hewitt* v. *R. R.* 67 Mich. 61; *Bengston* v. *R. R. Co.* 47 Minn. 486; *Bonnet* v. *R. R. Co.* (Tex. Civ. App. 1895) 31 S. W. 525; *Leazotte* v. *R. R. Co.* 70 N. H. 5; *R. R. Co.* v. *Williams* (Tex. Civ. App. 1897) 39 S. W. 967; *Portance* v. *Coal Co.* 101 Wis. 574; *Rumsey* v. *R. R. Co.* 151 Pa. 74; *Bancroft* v. *R. R. Co.* 67 N. H. 466; *R. R. Co.* v. *Turner,* 3 Tex. Civ. App. 487; *Long* v. *Railroad Co.* 96 Cal. 269; *Cheeney* v. *Ocean S. S. Co.* 92 Ga. 726; *Railroad Co.* v. *Donahue,* 75 Ill. 106; *Swift* v. *Rutkowski,* 167 Ill. 156; *R. R. Co.* v. *Schroeder,* 47 Kan. 315; *Railroad Co.* v. *Drake,* 53 Kan. 1; *Rutherford* v. *Railroad Co.* 57 Minn. 237; *Railroad Co.* v. *Thomas,* 51 Miss. 637; *Railroad Co.* v. *Barber,* 5 Ohio St. 542; *R. R. Co.* v. *Fitzpatrick,* 31 Ohio St. 479; *Railroad Co.* v. *Harriett,* 80 Tex. 74; *Eddy* v. *Rogers* (Tex. Civ. App.) 27 S.

W. 295; *R. R. Co.* v. *Lemon,* 83 Tex. 143; *R. R. Co.* v. *Rogers,* 6 C. C. A. 403, 57 Fed. 378.

Mr. Justice ROBB delivered the opinion of the Court:

The first and second assignments of error may be considered together, as one specifies as error the action of the court in entering judgment for the defendant on the special verdict of the jury, and the other specifies as error the failure of the court to enter judgment for the plaintiff on that verdict.

Counsel for appellee frankly agree that ordinary care required the presence of a light on the rear of its cars after sundown, but they contend that inasmuch as the company provided such lights for this run, and placed them on the curb at 4th and T streets, and promulgated a rule requiring conductors at that point to equip their cars with such lights, the company was not liable for an injury resulting to a fellow servant by the negligence or omission of a conductor in failing to thus equip his car.

Of course, the master is absolved from responsibility to a servant for injuries resulting from the ordinary risks of his employment, including the negligence of a fellow servant, but the master must exercise reasonable care in the selection of his servants, and must provide reasonably safe machinery, appliances, and equipment, and keep the same in proper repair; and if he fails in either respect, and the servant is injured because of such failure, the master will be liable. In other words, the servant assumes the natural and reasonable risks incident to the particular service in which he is engaged, but he does not assume the risks of the master's negligence. "It is the duty of the employer," said Mr. Justice Field in *Northern P. R. Co.* v. *Herbert,* 116 U. S. 647, 29 L. ed. 758, 6 Sup. Ct. Rep. 590, "to select and retain servants who are fitted and competent for the service, and to furnish sufficient and safe materials, machinery, or other means by which it is to be performed, and to keep them in repair and order. This duty he cannot delegate to a servant so as to exempt himself from liability for injuries

caused to another servant by its omission. Indeed, no duty required of him for the safety and protection of his servants can be transferred so as to exonerate him from such liability."

Mr. Justice Brewer, in *Baltimore & O. R. Co.* v. *Baugh,* 149 U. S. 386, 37 L. ed. 780, 10 Sup. Ct. Rep. 914, thus stated the rule: "Of course, some places of work and some kinds of machinery are more dangerous than others, but that is something which inheres in the thing itself, which is a matter of necessity, and cannot be obviated. But within such limits, the master who provides the place, the tools, and the machinery owes a positive duty to his employee in respect thereto. That positive duty does not go to the extent of a guaranty of safety, but it does require that reasonable precautions be taken to secure safety; and it matters not to the employee by whom that safety is secured, or the reasonable precautions therefor taken. He has a right to look to the master for the discharge of that duty, and if the master, instead of discharging it himself, sees fit to have it attended to by others, that does not change the measure of obligation to the employee, or the latter's right to insist that reasonable precaution shall be taken to secure safety in these respects. Therefore it will be seen that the question turns rather on the character of the act than on the relations of the employees to each other. If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master; but if it be not one in the discharge of such positive duty, then there should be some personal wrong on the part of the employer before he is held liable therefor." See, also, *Union P. R. Co.* v. *O'Brien,* 161 U. S. 457, 40 L. ed. 770, 16 Sup. Ct. Rep. 618; *Northern P. R. Co.* v. *Peterson,* 162 U. S. 353, 40 L. ed. 997, 16 Sup. Ct. Rep. 843.

This case therefore turns on the determination of the question whether the duty of actually equipping its cars with red lights for use after dark was an imperative duty resting upon the company, a duty which it could not delegate so as to escape liability for injuries suffered by its servants by reason of the omission or neglect on the part of the servant or agent in-

trusted therewith. At the outset we must have in mind the important and, perhaps, the controlling fact that the appellee is a common carrier of passengers, and as such is charged with grave responsibility.

In the argument at bar it was earnestly contended by counsel for appellant that the court below erred in declining to admit in evidence a police regulation in force in the District of Columbia at the time of the accident, providing that "every street car in motion after sundown shall have two lights, one displayed at each end thereof;" but there is no assignment of error predicated upon this ruling of the court, and we therefore lay it out of view with the observation that the accident having occurred in Maryland, and the regulation having no extraterritorial effect, the right of the appellant to recover must be governed by the *lex loci,* and not by the *lex fori.* Under the common law in force in Maryland the safety of those in charge of electric cars and the safety of passengers required such an equipment, and the jury so found. The regulation in force in the District is simply argumentative on the question of the importance of such a precaution against accident, and may properly be considered by the court in determining the character and measure of the company's responsibility.

In the case of *Flike* v. *Boston & A. R. Co.* 53 N. Y. 550, 13 Am. Rep. 545, the accident occurred because there was an insufficient number of brakemen upon the train. The company provided a head conductor, whose duty it was to direct other conductors and to assign brakemen to go with the several trains. After receiving instructions from the head conductor, trains were started by and were under the control of their own conductors. The head conductor assigned a proper number of brakemen to go with this particular train, but one overslept himself and failed to go, and the train was started without him and without notice having been given to the head conductor of the absence of this brakeman. The train broke in two, and eleven cars, upon which there was only one brakeman, ran back and collided with plaintiff's train, causing the injury. It was held that an imperative duty rested upon the company to actually

equip its trains with sufficient help, and that it was negligence to start a train without such help. The court said: "It was clearly the duty of the corporation, in making up and despatching the advance train, to supply it with suitable machinery and sufficient help for the business and journey which it was about to undertake; and if there was any want of care in these respects, which caused the injury, it is liable. * * * The hiring of a third brakeman was only one of the steps proper to be taken to discharge the principal's duty, which was to supply with sufficient help and machinery and properly despatch the train in question, and this duty remained to be performed although the hired brakeman failed to wake up in time, or was sick, or failed to appear for any other reason. It was negligent for the company to start the train without sufficient help. The acts of Rockefeller cannot be divided up, and a part of them regarded as those of the company, and the other part as those of a coservant merely, for the obvious reason that all his acts constituted but a single duty. His acts are indivisible, and the attempt to create a distinction in their character would involve a refinement in favor of corporate immunity not warranted by reason or authority. As well might the company be relieved if the train was started without an engineer, or without brakes, or with a defective engine." This case was cited with approval by the Supreme Court of the United States in *Northern P. R. Co.* v. *Herbert,* 116 U. S. 649, 29 L. ed. 759, 6 Sup. Ct. Rep. 590, the court, in referring to the case, saying: "There it appeared that the accident which caused the injury complained of was in consequence of an insufficient number of brakemen on the cars of the company. The fact that the company had an agent whose business it was to make up the trains, to hire and station the brakemen, and to prepare and despatch the trains, did not relieve it from liability." This and the later case of Booth against the same company, growing out of the same accident, and reported in 73 N. Y. 38, 29 Am. Rep. 97, were cited by Mr. Justice McKenna in *Deserant* v. *Cerillos Coal R. Co.* 178 U. S. 420, 44 L. ed. 1133, 20 Sup. Ct. Rep. 967, wherein he said: "It is undoubtedly the master's duty to

furnish safe appliances and safe working places, and if the neglect of this duty concurs with that of the negligence of a fellow servant, the master has been held to be liable."

*Collins* v. *St. Paul & S. C. R. Co.* 30 Minn. 31, 14 N. W. 60, was an action to recover damages for an injury to plaintiff's intestate, Collins, who was employed by the defendant in repairing its track, and who was struck by a locomotive of the defendant. It appeared that the headlight in front of the locomotive was not lighted at the time of the accident, and this was alleged as negligence. The court said: "The negligent omission to provide a headlight (or lantern) upon the locomotive,—it appearing that a headlight is necessary to the safe running of a train in the dark,—would have been the negligence of the defendant, as between it and its servants, for which it would have been liable to them for injuries caused by it. *Drymala* v. *Thompson,* 26 Minn. 40, 1 N. W. 255. There was, however, no evidence that there was not a headlight on the locomotive; on the contrary, the evidence was full and satisfactory that it had a headlight. There was evidence enough that it was not lighted at the time. That was due to the neglect of those in charge of the train,—fellow servants of Collins,—for whose negligence the defendant would not be liable to him or his representatives." It will be observed that the court predicated its ruling solely upon the fact that the headlight was *"on the locomotive"* at the time of the accident, and expressly stated that "the negligent omission to provide a headlight * * * upon the locomotive * * * would have been the negligence of the defendant, as between it and its servants."

In *Kelly* v. *New Haven S. B. Co.* 74 Conn. 343, 57 L.R.A. 494, 92 Am. St. Rep. 220, 50 Atl. 871, the accident was caused by the failure of the company's agent to use a fender in unloading a boat. It appeared that the company "had furnished a sufficient fender, and a place in which it could be used, *and it kept the fender in a proper and convenient place at all times ready for use."* The court held that the company was not liable for the failure of the crew to use the fender. In this case, as in the Minnesota case, the appliance had been furnished by

the master, and was in a proper place and ready for use when
necessary.

A case still more in point is the case of *Whittlesey* v. *New
York, N. H. & H. R. Co.* 77 Conn. 100, 107 Am. St. Rep. 21,
58 Atl. 459. In that case action was brought for the death of
a section hand, caused by a collision of a freight train with a
hand car on which the deceased was riding. The foreman in
charge of the hand car negligently failed to send forward a
signal flag to apprise approaching trains of the presence of the
men on the track. The court said: "At the time of the collision
these section hands, including Sullivan and Dwyer, were en-
gaged in the work of keeping a portion of the defendant's road-
bed in repair. * * * To perform it with reasonable safe-
ty required a signal flag to be sent ahead of the hand car. It
was the duty of the railroad company to exercise reasonable care
to provide these men with suitable means and appliances for
so signaling approaching trains. Having performed that duty,
nothing further was required of the defendant in order to render
the place where the men were working reasonably safe. It then
became the duty of the men to use the means provided for the
safe and proper performance of their work. The act of carry-
ing forward a signal flag was one which the men were compe-
tent to perform, and it was the duty of Dwyer to order it to
be done, just as it was his duty to direct the performance of
other details of the work in which they were all engaged. The
defendant provided a suitable hand car *properly equipped with
signal flags* and a sufficient number of competent men for the
proper performance of the work. Having done this, it was
not required to see that the flag was used when necessary. That
was a duty of the servants, the negligent failure of Dwyer to
perform which was the negligence of a fellow servant of Sulli-
van, for the consequences of which the defendant is not liable."
It will be seen that the court proceeded upon the theory that
the foreman in equipping and starting out the hand car was
*pro hac vice* the principal, and that, having provided a suitable
hand car, and having properly equipped it with suitable work-
men as required by the *Flike Case, supra,* and having actually

equipped it with signal flags, his failure to *use* the appliances thus provided was the failure of a fellow servant, for which the company was not liable. Under this reasoning, can it be contended that the court would have absolved the company from liability if the evidence had shown that the car was not equipped with signal flags, but that such flags might have been procured by the foreman at the car barn before starting out on the day of the accident? Manifestly not.

In the instant case it is perfectly clear that cars could not be operated with safety after dark unless equipped with light other than that furnished by the electric current which propelled the car. There is not one word of testimony that it was impossible, or even impracticable, to have such lights on the cars when they left the car barn. Just why the company should have resorted to the practice of placing these lights on the curb instead of on the cars does not appear.

It appears in evidence that it was not an infrequent occurrence for a trolley pole to jump the wire and leave the car and its occupants in darkness and danger. This fact must have been known to the company, and imposed upon it the duty and responsibility of taking adequate precaution to equip its cars with end lights. How did it meet that duty? By merely providing lights, and placing them on the sidewalk, and trusting to the memory of busy conductors to equip their cars therewith. Obviously, no car was equipped with an end light while that light was off the car and on the sidewalk. It was equipped with such a light in legal contemplation when, and only when, the light was in place on the car. When once in place on the car and ready for use, the company's responsibility ceased.

When Carter engaged with the company as one of its motormen, he assumed, as previously stated, the ordinary and natural risks incident to the employment, among which was the risk of the trolley pole jumping the wire, provided such an occurrence should not be due to faulty construction, the risk of a fellow servant's failure to light a signal lamp, or the risk of a fellow motorman's carelessness in backing a car into his; but he did not assume the risk incident to the lack of necessary and

proper appliances on his own and other cars, including signal lamps.

We are forced to conclude that good judgment and public policy demand that the company be required at its peril to, in fact, equip its cars with such light, and thus protect its employees and the lives of the passengers entrusted to its keeping. Common carriers of passengers should be held to a very strict accountability for any dereliction of legal duty, which increases the hazards and dangers of travel. It is to just such derelictions as occurred in this case that so many appalling accidents are traceable. Indeed, the tendency of the times is towards hurry and haste and carelessness, regardless of human life, and this tendency on the part of common carriers of passengers should, if possible, be checked.

Shaffer, who was in charge of car No. 409, was a comparatively inexperienced conducter. To be sure, he had been instructed to stop his car at 4th and T streets, and equip it with a red light; but we all know how easy it is for an inexperienced person charged with remembering many things to forget some. The company should have known this, and instead of placing lights on the curb it should have placed them on the car before the car left the car barn. Had the light been on the car, the accident probably would not have occurred, because the moment the car became in darkness Shaffer would have remembered to light his red lamp even though he had previously forgotten to do so.

An examination of the cases cited by appellee will show, with possibly one exception, and that a State case, that in each instance the device or appliance was actually furnished by the master and placed in a proper position ready for use, and that the injury was caused by the subsequent failure of a fellow servant to use the appliance.

The record shows that Carter knew of the practice of conductors to equip their cars in the manner stated, but we are convinced that this knowledge does not in any way militate against his right of recovery. "The employee is not compelled to pass judgment on the employer's methods of business, or to conclude

as to their adequacy." *Texas & P. R. Co.* v. *Archibald,* 170 U. S. 672, 42 L. ed. 1191, 18 Sup. Ct. Rep. 777. In *Choctaw, O. & G. R. Co.* v. *McDade,* 191 U. S. 68, 48 L. ed. 100, 24 Sup. Ct. Rep. 24, it is said: "The employee is not obliged to pass judgment upon the employer's methods of transacting his business, but may assume that reasonable care will be used in furnishing the appliances necessary for its operation." See also *Texas & P. R. Co.* v. *Swearingen,* 196 U. S. 62, 49 L. ed. 387, 25 Sup. Ct. Rep. 164.

We are convinced that Carter, who was comparatively new in the business, and whose duty did not compel him to have anything to do with these lamps, had a right to assume that the company would perform its duty and take adequate precautions to equip its cars with end lights, and that the failure of Shaffer in that respect was the failure of the company, for the consequences of which the company must be held responsible.

This disposes of the case, and renders it unnecessary to consider the other assignments of error.

The judgment is reversed, with costs, and the cause remanded, with directions to enter judgment for the plaintiff in the sum of $2,500, the amount named in the special verdict of the jury, and interest from the date of such verdict. *Reversed.*