R. J. Gallespie, *Plaintiff in Error*, v. Oak Thornton, *Defendant in Error.*

Division B.

Opinion filed July 27, 1927.

Petition for Rehearing Granted November 1, 1927.

Judgment of July 27, 1927, Reaffirmed July 2, 1928.

*Marks, Marks & Holt* and *A. D. McNeill,* Attorneys for Plaintiff in Error;

*Edgar W. Waybright* and *James Royall,* Attorneys for Defendant in Error.

BUFORD, J.—The defendant in error sued plaintiff in error in the Circuit Court of Duval County for damages alleged to have been sustained while engaged as a workman on a building which was being erected under contract by the plaintiff in error.

The first count of the declaration alleges that.the injury for which damage is claimed was occasioned by the plaintiff in error negligently, carelessly and unskillfully providing a place for the defendant in error to work, in the following language:

"It was necessary to stand on certain pans in the floor of the said building; that the defendant, by his said superior officer and agent, had caused said pans to be constructed so negligently, carelessly and unskillfully that without fault and without any neglect of the plaintiff, and

while he was performing said work in obedience to said orders, one of said pans gave way and broke, whereby,'' etc.

The second count of the declaration alleges that:

''Defendant required the plaintiff to perform his work standing in a concrete pan which the said defendant had caused to be constructed so negligently, carelessly and unskillfully that without fault and without any neglect of the plaintiff, while the plaintiff was performing his duties, it gave way and fell,'' etc.

There were five pleas addressed to both counts of the declaration. These pleas embraced: first, the general issue; second, assumed risk; third and fourth, each contributory negligence, and, fifth, that the injury was caused by the negligence of a fellow servant. Sixth and seventh traversed specific allegations of the first count of the declaration, while the eighth and ninth traversed specific allegations of the second count of the declaration. On issue joined on these pleadings trial was had. The defendant in the court below moved for a directed verdict at the close of the plaintiff's testimony and again at the close of the evidence, each of which motions were denied by the trial court. The jury returned verdict in favor of the plaintiff, the defendant in error here, and assessed his damages at $15,-000.00, to which judgment writ of error was taken.

The probative force of the evidence shows that the defendant in error was employed as an engineer to operate a stationary hoist engine; that on the day of the injury the service of the engine was not required and the engineer was directed by the superintendent in charge of the construction of the building to go up on the building and assist other workmen in removing and replacing certain steel rods. That steel pans made and set in place for the purpose of constituting forms upon which concrete was to be poured to construct the floor between the first and second

stories of the building had been set in place and that such pans were proper and adequate appliances for the purpose for which they were intended, but that upon the occasion of the occurrence of the injury the pans were not being used as forms upon which to pour and set up concrete but were then being used under the specific and positive directions of the superintendent of the plaintiff in error as a place upon which the laborers, including the defendant in error, were required to stand and to walk in the performance of the duties then and there required of them. That the defendant in error was specifically and personally directed by the superintendent to stand and walk on and across the pans in the performance of his work. That he, the defendant in error, asked the superintendent in effect if the pans were so constructed and so set in place as to be safe for him to stand and walk upon in the performance of his work and that he was then and there advised that the pans were so constructed and so placed that they did then and there constitute a safe place for the defendant in error to stand upon and walk upon in the performance of his work. That in pursuance to such instructions and advice the defendant in error in the performance of his work did stand and walk upon such pans and while he was so standing and walking on said pans in the performance of his work four of the pans turned under his feet and gave way beneath him in such manner as to allow him to fall through to the floor below, breaking or otherwise permanently injuring his back. The evidence further shows that the defendant in error was not acquainted with the construction or the dangerous condition of the pans which were then and there being used as a platform upon which he should stand and walk and that in truth and in fact, the pans as constructed and placed did not constitute a safe place upon which a person could stand or walk in the perform-

ance of work such as that as was being performed by the defendant in error and that the fact that they did not constitute a safe place to stand or walk on in the performance of such work was well known to, or should have been well known to, the plaintiff in error and to his superintendent in charge of the work.

There was ample evidence to sustain the cause of action as stated in the second count of the declaration and the jury having returned a verdict in favor of the plaintiff, we are unable to say that the verdict was without material and sufficient evidence to support the same, or that the evidence introduced so strongly sustained either of the defendant's pleas that it becomes the duty of the Court to reverse the judgment based upon the verdict of the jury rendered upon such evidence. Much has been said in the argument of this case in regard to the law of ''perverted use'' and it has been contended by the plaintiff in error that the plaintiff in the court below could not recover because as a general principle, which is frequently conclusive against the servant's right to maintain an action, the master's duty in respect to his instrumentalities is restricted to seeing that they are reasonably safe for the performance of the functions for which they were designed and that the facts in this case come within that general principle. It is contended that it having been shown that the pans referred to were proper appliances and were safe instrumentalities for the purpose for which they were designed (that is, to support concrete when poured to form a floor), that the plaintiff in the court below assumed the risk and forfeited his right to maintain an action by putting the pans to another and different use from that for which they were primarily intended. The evidence does not support that theory but very clearly places this case under the exception to the general rule. This exception has been stated

by Mr. Labatt in his excellent work on "Master & Servant," 2nd edition, Section 923, as follows:

"If new functions are imposed upon an instrumentality by the master himself or his representative, and the servant is thereby exposed to undue risks, the master must answer for any injury resulting from those risks, and cannot excuse himself by showing that the instrumentality was a suitable one for the performance of the work for which it was originally supplied. The master's acquiescence in the use of an appliance for some purpose other than that for which it was intended puts him in the same position as if the appliance had been originally furnished for that purpose. Accordingly, a qualification of this rule, that a servant cannot recover in the absence of evidence showing that the appliance in question was constructed with reference to the use to which it was being put when the accident occurred, is admitted in cases where it appears that it was customary for employes to put it to that use, and that the master knew of this custom. But the mere fact that an appliance had been diverted to new uses before the accident in suit will not render the master liable, if that diversion occurred without his knowledge or consent. Nor is an occasional improper use of an appliance, not in pursuance of a recognized custom, sufficient to render the master liable on the ground of acquiescence. Nor will negligence be imputed to an employer of experienced men, so as to render him liable for injuries sustained by them, because he permits them to relax his regulations or disregard his general instructions or advice, when they choose to do so for their own convenience and with knowledge of the risk."

This rule as stated by Mr. Labatt is supported by the weight of authority as expressed in court decisions throughout the country. Mr. Justice Lamar, speaking for the Su-

preme Court of Georgia, in the case of Babcock Brothers Lumber Company v. Johnson, 48 S. E. 438, text 440, says:

"If, in ignorance of the danger, the master sends an employe to labor, his responsibility is measured by the application of the rules relating to the use of appliances in a way and for a purpose not intended. But if he knows of the danger—knows that there is a trap—and yet sends the employe unwittingly into the trap, he is not only morally guilty but civilly liable. And, of course, the master might be liable even in those cases where he is not morally guilty, for he might be chargeable if his agent had knowledge of the trap."

In McCaffrey v. Tamm Bros. Glue Company, 123 S. W. 944, text 945, the Supreme Court of Missouri, speaking through Mr. Justice Goode, says:

"A master who sanctions the continuous use of an appliance by his employes for a purpose different from the one it was designed for is bound to exercise care to have the appliance reasonably safe for the employe's use in this novel purpose."

We adopt the above quoted statement of the law by Mr. Labatt as a statement of the law as it obtains in this State. The law of assumption of risk as applicable to the facts in this case has been aptly stated in a recent decision of this Court in the case of Wilson & Toomer Fertilizer Co. v. Lee, reported in 106 So. 462, in which Mr. Justice TERRELL speaking for the Court, says:

"An employee is not charged by law with the assumption of a risk arising out of defective appliances provided by his employer, unless his employment was of such a nature as to bring to his attention and cause him to realize and comprehend the dangers incident to the use of such appliances. The Supreme Court of the United States in Gila Valley, G. & N. R. Co. v. Hall, 232 U. S. 94, 34 S. Ct.

229, 58 L. Ed. 521, upheld a charge embodying this principle of law, the pertinent part of the opinion being as follows:

" 'An employe assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. But the employe has a right to assume that his employer has exercised proper care with respect to providing a safe place to work, and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employe becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employe with the assumption of risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety, or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it. Union Pacific Railway Co. v. O'Brien, 161 U. S. 451, 457 (16 S. Ct. 618, 40 L. Ed. 766), Texas & Pacific Railway Co. v. Archibald, 170 U. S. 665, 671 (18 S. Ct. 777, 42 L. Ed. 1188) ; Choctaw, Oklahoma, etc., R. Co. v. McDade, 191 U. S. 64, 68 (24 S. Ct. 24, 48 L. Ed. 96) ; Texas & Pacific Railway Co. v. Swearingen, 196 U. S. 51, 62 (25 S. Ct. 164, 49 L. Ed. 382) ; Burns v. Delaware & Atlantic Telegraph Co., 70 N. J. Law 745, 752 (59 A. 220, 592; 67 L. R. A. 956).''

There is ample evidence to sustain a verdict for compensatory damages against the defendant and no material or harmful errors appear in the record except that the amount awarded as damages is manifestly excessive. If within thirty days after the filing of the mandate in the

court below, the plaintiff remits $7,500.00 of the damages awarded the judgment will stand affirmed for $7,500.00. Otherwise the judgment will stand reversed for a new trial.

WHITFIELD, P. J., AND TERRELL, J., concur.

ELLIS, C. J., AND STRUM AND BROWN, J. J., concur in the opinion.