CULLEN J.
This action is brought to recover damages for the death of plaintiff’s intestate. The deceased, who, at the time of the accident which caused his death, was 14 years old, was employed in the factory of the defendant. The defendant was engaged in the manufacture of household utensils. The particular work upon which the deceased was employed was the cleaning of spoons. The general process of cleaning the spoons was briefly as follows : The spoons were first dipped into melted or boiling grease, and then into a pot of melted metal. They were then again dipped into the boiling grease, then taken out, and the grease allowed to drain off to some extent; then after being shaken, placed on a perforated pan, which was put into a bath of turpentine. After remaining there about two minutes, the spoons were taken out of the turpentine, and placed in sawdust. The turpentine was used to clean the grease from the spoons, and at times would smoke from the repeated insertions of the heated metal. It was the custom to change the turpentine from time to time, as it became dirty from use. The deceased had been in this employment for three days. At the time of the accident, which was shortly after the noon intermission from work, the deceased placed a tray of spoons in the turpentine, which then ignited. The boy’s cloths took fire from the turpentine, and he was burned to such an extent that he died the following day.
The only exceptions taken on the trial were to the refusal of the court to dismiss the complaint. Hence the sole question presented by this appeal is whether, in any aspect of the evidence, the jury was warranted in finding that the defendant had been guilty of negligence which caused the accident. The occurrence of the ac *561 cident was not sufficient to impute fault to the defendant. The plaintiff was required to go further, and establish some particular fault or shortcoming in the discharge of the master’s duty. The -defendant not only contends that, if there was fault, it was not on the part of the master, but the fault of a fellow servant, but further insists that the evidence was not sufficient to show from what -cause the accident happened. The evidence established that the turpentine had not been changed during the day of the accident. Of course, the repeated insertions of the hot spoons tended to heat the turpentine, and render it liable to ignite. The failure to change the turpentine, it is claimed, was the negligence of a fellow servant. This would doubtless be the case, had the master made any rule or regulation on the subject to guard against the danger. But none such seems to have been made. Whether the absence of any regulation would have been a sufficient ground upon which to predicate negligence presents a serious question, which we need not decide, as we agree with the counsel for the defendant in his claim that the evidence would not warrant a finding that the failure to change the turpentine caused it to take fire. Had the turpentine ignited before the dinner hour, it might have been attributed to this cause. But the fire took place almost immediately after the dinner hour. During this intermission of three-quarters of an hour the turpentine must have cooled, and it is difficult, if not impossible, to see how the fire is to be attributed to its previously heated state. But, though the fire did not occur from the failure to change the turpentine, we think the jury might well have found that it proceeded from the insertion of the heated spoons. The imilammable character of turpentine is a fact well known, and was established in this case by proof. That a metal spoon could be heated to a sufficient temperature to ignite turpentine, or a far less inflammable material, is unquestionable. The fire occurred upon the insertion of the hot spoons. No other cause for the fire is shown. It is suggested that a spark from one of the fives in the room might at the time have fallen into the turpentine, but no such fact was proved. I think, therefore, the fact was that the turpentine took fire from the spoons, and that the evidence would' justify a finding to that effect. The statement of one of the witnesses, that shortly after the accident he felt the spoons, and that they were cold, was not sufficient to conclusively negative the presumption that might be drawn from the occurrence of the fire. It may well be that the witness was mistaken as to the condition of the spoons, or, if correct as to that, then in error as to the time when he felt them. This view as to the cause of the fire was strengthened by other testimony, that the spoons when taken from the grease, were very hot—“ hot enough to burn your hands”—and were allowed to hang for a time to let the grease -drain off and the spoons cool. I think the real cause of the fire was that the spoons had not sufficiently cooled, and were too hot, when placed in the turpentine, or, at least, that the jury might well have so found.
The question then arises, was this cause of the fire to be ascribed *562 to fault on the master’s part ? It was undoubtedly the act of the deceased himself that led to the fire. If he knew, or should have known, of the danger of inserting the spoons when too hot,, and the duty of seeing that they had, to some extent, cooled, before placing them in the turpentine, the fault of negligence was his own. But the deceased was an ignorant Italian boy, only fourteen years old. He had worked in his occupation only three days. He was given no instruction as to the danger of his employment, and no caution as to the care which he was to exercise to avoid such danger. In Hickey v. Taaffe, 105 N. Y. 26; 6 S. R 416, a recovery by the plaintiff, a child employed at an ironing machine, was defeated on the ground that she had acquired, by a period of six weeks’ service, all the information that instruction could impart to her. But it was there said:
“ Assuming the plaintiff’s statements in this case to be true,— that she had no instructions as to the danger of the machine, and that she had never worked at any machinery before,—if, under such circumstances, this accident had happened within a short time of her employment, and because of her unfamiliarity with, and lack of appreciation of the dangers attendant upon the working of, the machine, the defendant may well have been held liable for the damages sustained by her on account of such ignorance.”
Here, as already stated, the deceased had been engaged at the work but three days. In the case of obvious and patent dangers, no instruction is necessary. In Buckley v. Manufacturing Co., 113 N. Y. 540; 23 S. R 618, the plaintiff was injured by having his fingers crashed between cogwheels. He slipped on the floor, and, to save, himself from falling, instinctively put out his hand upon the moving cogs. It was held that the defendant was not liable, because the danger from placing his fingers between the revolving cogs must have been as obvious to the plaintiff as to any grown man. It was said :
“ There is no rule of law that a minor may not be employed about a dangerous machine, and the simple fact that a machine is-dangerous does not make an employer liable for an injury received by a minor employed upon such machine.”
At the same time, however, the court .recognized that instruction might be necessary, for it is further said :
“ All the law requires is that the minor should be properly instructed as to the danger to which he is exposed, and, if he is injured because he has not received such instruction, then, as a general rule, the employer may be held responsible.”
So, in Crown v. Orr, 140 N. Y. 450; 55 S. R 834, the plaintiff was injured by the knives of a planing machine. It was held that the danger was obvious, and the plaintiff could not recover. Still, it was again said:
“If the injury to the servant is attributable to the master’s-neglect in omitting to furnish safé and adequate appliances for the work, according to the nature of the business, or competent co-servants, or even if he neglects to give persons unacquainted with tin; use of machinery proper instructions with respect to its use, he is liable.’’
*563 The question is therefore further narrowed to this: Was the danger of the work obvious to plaintiffs intestate, or, if not, was it sueh that proper instructions would have enabled the deceased to guard against it? If this latter was the case, then the failure to instruct was negligence. We are of opinion that the danger was not obvious. Of course, we know that turpentine is a very inflammable substance. Whether the boy was chargeable with that knowledge, we doubt. But, assuming that he must be presumed to have had such knowledge, that knowledge alone did not render the risk obvious. This case is to be distinguished from those 'of Buckley v. Manufacturing Co. and Crown v. Orr. In those cases, contact with dangerous machinery would necessarily cause injury, and the employment did not necessitate contact. Here the employment of the deceased required him to do the very thing which caused the accident, to wit, to insert the spoons. The danger depended on the heat of the spoons. It may be that it was necessary to place them in the turpentine before they were entirely cooled, because in the latter case the grease would become hard, and not so easily removed. But at the same time it seems plain that they should have been allowed to cool sufficiently to prevent any danger of igniting the turpentine. We think the jury might properly find that a mere boy, of the age of the deceased, could not have been expected to know the danger and the means of avoiding it, and that he should have been instructed, not only to see that the spoons had sufficiently cooled before bathing them in the turpentine, but that he should have been given some practical standard for him to apply, or that there should have been some regulation or rule on the subject, and that the fire was caused by the failure to give such instruction or prescribe such regulation.
The fact that no previous accident of this character had happened does not relieve the master from liability, provided the accident was such that the probality of its occurrence might reasonably have been foreseen. We think this accident of such a character. The danger of igniting the turpentine from inserting the heated metal was one that should have been anticipated by a person having the technical knowledge on the subject that the master should have possessed.
The point is made that the deceased was not in the employ of the defendant, but of one Corrigan, the foreman, as an independent contractor. The evidence of the relation Corrigan bore to the defendant is meagre, and its purport not entirely clear. He testified at first:
“ I am foreman of this factory. The factory was carried on by the Central Stamping Company,—owned by the Central Stamping Company; and the foremen were employed by the Central Stamping Company, and they were paid by the Central Stamping Company, and I was paid by the Central Stamping Company, and they owned the business, and I was foreman in the business."
On.cross-examination the witness testified that he was paid by the gross or hundred for the articles turned out in his department, and that out of that he paid the boys who worked under him. *564 But this latter statement was again qualified by the further testimony that he was only the foreman for that department, and under the superintendent. We think, at most, this evidence presented a question of fact for the jury to determine,—whether the deceased was in the employ of the defendant or of Corrrigan The^ learned trial judge seems to have assumed, in his charge to the jury, that the defendant was the employer of the deceased. To this the defendant made no objection, nor did it ask that the question be submitted to the jury. Therefore, if there was any evidence to justify the conclusion that the defendant was the employer, it can not now complain of the action of the trial court.
The judgment and order denying motion for a new trial, appealed from, should be affirmed, with costa.
All concur.