### DAILEY v. NEW YORK, N. H. & H. R. R. CO.

(Circuit Court, S. D. New York. February 19, 1909.)

1. Master and Servant (§ 286*)—Action for Injury to Servant—Questions for Jury—Negligence of Master.

The question whether a railroad company was chargeable with negligence in failing to provide a reasonably safe place for employés to work, because of its making the doors of a roundhouse so narrow as to leave a space of only 11 inches between an engine passing in or out and the posts on either side, *held* one for the jury in an action by an employé to recover for a personal injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1022; Dec. Dig. § 286.*]

2. Master and Servant (§ 201*)—Injury to Servant—Negligence of Fellow Servant.

A master is not relieved from liability for an injury to a servant on the ground that it was caused by the negligent act of a fellow servant, where the master's negligence was a concurring cause.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 515; Dec. Dig. § 201.*]

3. Negligence (§ 136*)—Actions—Question for Jury.

Negligence becomes a question of law for the court only when the facts are such that fair-minded men can draw from them but one inference upon the issue.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 293; Dec. Dig. § 136.*]

4. Master and Servant (§ 101*)—Injury to Servant—Duty of Foresight.

The rule that it is the duty of a master to exercise reasonable care to provide a reasonably safe place for servants to work applies to permanent structures as well as to movable ones and appliances, and as well to the location thereof as to their mode of construction, and, while he is not bound to provide against every possible danger, he is bound to fore-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

see and provide against all probable contingencies, even though they have not occurred in the past.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 172; Dec. Dig. § 101.*]

5. MASTER AND SERVANT (§ 284*)—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY.

Plaintiff, who was a locomotive fireman in the employ of defendant railroad company, was assigned to work as a hostler at a roundhouse, and on the first night of such work was injured by being caught between the tender of an engine which was being taken into the house and the post at the side of the door, which was only 11 inches from the side of the tender. It was winter, the place was not well lighted, and when a door was opened the smoke and steam coming out further obstructed the view. It was plaintiff's duty to take engines from the turntable into the house, where they were usually run by their own steam; but plaintiff testified that there was not sufficient steam up in the one in question to move it, and that, while he was in the cab making more fire, the foreman caused another engine to be run against his and to kick it into the roundhouse with considerable force; that there was no bumper at the end of the track, and, as there was not enough steam to work the brake, he was compelled to get off the engine to block the wheels, and in doing so in the darkness was caught between the tender and the post. *Held*, that under the circumstances shown, whether defendant was negligent in making the doorways so narrow, and, if so, whether such negligence contributed, with that of the foreman, to cause the injury, and whether plaintiff assumed the risk or was guilty of contributory negligence, were all questions for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1000, 1001, 1022, 1067, 1070, 1122; Dec. Dig. § 284.*]

At Law. Motion to set aside verdict of jury and for a new trial on the grounds that there was no evidence of negligence sufficient to take the case to the jury; that plaintiff assumed the risks of the place, was guilty of contributory negligence, and that the accident and injury was caused by the negligence, if any negligence there was, of a fellow servant or co-employé.

Willet Hoysradt (Abram J. Rose, of counsel), for plaintiff.

Chas. M. Sheafe, Jr. (Nathaniel S. Corwin, of counsel), for defendant.

RAY, District Judge. The defendant is a Connecticut railroad corporation, owning and operating a line or lines of railroad in said state, and at East Hartford, Conn., has what is known in railroading as a "roundhouse," a building constructed on a circle, or the part of a circle, with an open space, or area, in the center of the circular space, having a turntable thereon used for turning engines so they may be forced or run in any desired direction. The roundhouse itself has what are called "stalls," that is, spaces for the placing therein or "stabling" of engines, one stall for each engine, when not in use, or while being cleaned, or while undergoing slight or ordinary repairs. On its outer side the building has solid walls with windows for the admission of light, and on the inner side, next the open space in the center, before mentioned, each stall has double doors, or a double door, hung by hin-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ges to posts, or stanchions, placed at the entrance of the stalls and on both sides thereof, and which doors swing from the center of the doorway or entrance and on such hinges, so that, when it is desired to take an engine in or out of its stall in the roundhouse, the doors of the stall may be swung open, leaving a clear space for the purpose. These posts or stanchions serve to support the roof of the roundhouse also. Tracks lead from outside this building to the turntable, and other tracks lead from the turntable to each stall. It is seen that when an engine is brought in from the outside it may be run directly onto the turntable. When that is turned, if it be desired to place the engine in a stall not exactly opposite the place of entrance, the engine is turned with it until the rails on the turntable on which the engine stands are brought in proper relation to those leading into the proper stall, whereupon, by putting on steam and properly manipulating the brakes, the engine may be slowly run into the stall and brought to a stop at the proper point. There is usually a man to operate the turntable, and the engines coming into the yard from a trip are usually taken in charge by an employé, called "the hostler," outside the roundhouse, and run then by their own steam in onto the turntable, and thence into their respective stalls. The hostler, or the one taking the engine from the turntable into the stall, when so engaged, usually, and almost invariably, occupies the cab on the engine. That, under all ordinary circumstances and on all ordinary occasions, is his place, as he cannot control, start, and stop the engine and regulate its speed, if under steam, unless he is there. It is obvious that, if the engine is in order, under sufficient steam to move, the air brakes, if air brakes are used, as was the case here, are in working order, and nothing out of the ordinary occurs and the hostler does his duty, the engine will be under perfect control, and may be started and stopped at will, and there will be no necessity or excuse for the hostler to leave the cab while stabling the engine. Hence, under such circumstances, so far as he is concerned, there is no danger, if the doorway or opening into the stall is of sufficient height and width to permit the ingress and egress of the engine.

It is equally obvious that, if the engine is out of repair so as to interfere with its control, or the brakes are inoperative or fail, or the engine is pushed or shoved from the turntable into the stall by some outside force or power not controlled by the hostler, and which does not continue to properly control its movements, and the engine or its braking apparatus is in such condition that the hostler cannot control it when in motion from the cab, there might and probably would be necessity or necessary occasion for the hostler to leave the cab of the engine and the engine itself while in motion. Ordinarily, then, there will be no danger to the hostler arising from the narrowness of the entrance to the stall, but should circumstances arise, such as I have mentioned, and should there be necessity for him to leave the cab in the discharge of his duty and descend to the ground while the engine is on its way into the roundhouse, he will be exposed to great danger of injury if the entrance is so narrow that there is not room for his body between the side of the engine, or tank, and the posts or stanchions to which the doors are hung. In such case he will be in imme-

diate danger of being caught and crushed between the moving engine and the post or stanchion on the side of the entrance.

The roundhouse of the defendant at East Hartford occupied all but about 125 feet of the periphery of the circle, and contained 25 stalls. The space inside the roundhouse was divided into sections, each section having five or six stalls, and the sections were divided or separated from each other by brick walls running to the roof. When the engine was in place in the stall, there was a space of four to six feet from these posts to the rear of the tender or tank of the engine, and there was a space of five or six feet between the engine in one stall and that in the adjacent stall—less than that as you approached the entrance from the front of the stall. Some engines are a little wider than others, but at this roundhouse the open space between the side of the engine or tank as it passed through the entrance into the roundhouse did not exceed 11 inches in width. It was evident to one familiar with the place that there was not room for the body of a man between the post and the side of the engine, or for a man to ride in standing on the side of the engine. When engines were taken in and left, at this season of the year, December, 1906, they usually had fire and steam on, which filled these sections and stalls with smoke and steam and obscured vision. When the doors were opened for the entrance of an engine, the smoke and steam would rush out in dense clouds and make it very difficult to see surrounding objects. There was no light in these stalls, unless it might be the lantern of a workman at the further end of the stall, or of a workman engaged on an engine in an adjoining stall. There was an arc light in the open circular space where the turntable was located. There was nothing to prevent an engine passing into the stall from going on into and through the walls of the side of the roundhouse if the brakes were not applied, or if they did not hold when there was no steam on. This, so far as material, was the construction of this roundhouse, and these the usual conditions at the place in question in winter weather.

The turntable itself was about 60 feet in diameter, and it was 30 to 40 feet from the edge thereof to the entrance to the stalls. It was a slightly descending grade from the turntable to these doorways.

The plaintiff, Oliver Dailey, 38 years of age at the time of the accident, had been in the employ of the defendant company as fireman for something like a year at a place called "Hopewell Junction," and before that he had worked as fireman on the Erie Road some five or six years. He was not familiar with the construction of this roundhouse at East Hartford, but he had seen roundhouses at other places, and knew defendant's roundhouse at or near Hopewell Junction, which was similar in construction and had openings to its stalls of about the same width as the one in question. He was not a hostler, but had occasionally taken an engine into or from its stall at other places, and had acted as hostler at Hopewell Junction at different times. He had not had occasion to notice the construction specially, and his attention was not called to the construction or width of the openings to the stalls at East Hartford, except as he might be expected to observe such openings in doing what he did do after being put to work there. The

plaintiff went to East Hartford on the 8th of December, and reported to Mr. Nichols, the engine dispatcher of the defendant company at that place, who directed him to hostler the engines that night. His duty was to take the engines found outside the roundhouse and supply them with coal and sand and water, and then put them in their appropriate stalls in the roundhouse. Previous to this night of December 8, 1906, he had never placed an engine in the East Hartford roundhouse, nor had he ridden into it on an engine. He had been in the roundhouse, but went in through the side entrance.

The plaintiff commenced work about 6 o'clock in the evening, after dark, and worked at this business through the night. The plaintiff was unable to state how many engines he took in during the night, but he must have taken in several, as he was constantly busy. At about 5 o'clock in the morning he took charge of a locomotive out in the yard, away from the roundhouse, near the coaling station, which had, as he says, substantially no fire and but little steam on—not enough to move it. It had been storming, but had turned cold, and the wind was blowing. The plaintiff thereupon reported to Mr. Moriarity, foreman of the roundhouse or of this particular work, and who had immediate charge of it, and Moriarity told the plaintiff to fix up the fire and he would come out and assist the plaintiff. The plaintiff got on the engine and commenced to fix the fire. Moriarity came out and with another engine shoved this one down to the sandhouse and water station, where it was supplied with water and sand and coal, and then Moriarity shoved it with his engine in onto the turntable. The plaintiff says he did not then have sufficient steam to move his engine from the turntable into its stall, and that he stated this fact to Moriarity, who thereupon, without warning to the plaintiff as to what he was going to do, backed another engine from the stall behind him and kicked the engine plaintiff was on "off the turntable quite fast into the engine house." Plaintiff says he felt the shock, saw the man with the engine at the other end of his engine, and that his, plaintiff's, engine went right on into the engine house, meaning the roundhouse, which is the same thing. The plaintiff says that the brakes on this engine were operated by air, in turn operated by steam, all controlled by a lever; that he had the lever on a backward motion on the engine; that there was no steam on the engine to operate the air pump, and for this reason he could not apply the brakes. He says he opened the throttle to give the air pump what steam there was, but there was not enough to operate the brakes or hold the engine. The plaintiff says that the speed of the engine he was on was such he saw it would pass on off the rails or tracks and into, if not through the side walls of the roundhouse; that there was no way of checking its progress or stopping it, except to jump off and block the wheels of the engine by placing something in front of them. He says that he started to get down on the engineer's side for the purpose of putting a block under the wheels; that the speed did not slacken, and that as he was getting down in the smoke and steam, which prevented him from seeing his surroundings, and which was coming from the doors of the roundhouse, he was caught between the side of the engine or tank of the tender and the post to which the door was hung by the side of the

entrance and crushed, rolled around between the post and side of the tank, and that he then fell to the floor of the roundhouse. He further says that he heard the crash of the engine into the side of the round-house when it ran off the ends of the tracks. The plaintiff says that in the darkness, smoke, and steam coming from the stall he could scarcely see anything, it so obscured his vision, and that his eyesight was good. The plaintiff says that he did not see this post or stanchion before he started to get off, or as he was getting off, and he did not have it in mind.

The plaintiff was assisted to his feet and to his boarding house, where he was confined to his bed under medical treatment for some time. He gave evidence tending to show that he suffered bruises, a broken arm, injury to his spinal column, and a rupture. He gave evidence as to his earnings and the permanency of his injuries. The defendant did not deny that the plaintiff was injured on the occasion mentioned substantially in the manner and by the means described. The defendant did not deny that the plaintiff was in its employ and in the line of his duty at the time, but did claim, and gave some evi-dence from Moriarity and others tending to show, that there was a hand brake on the engine which plaintiff could have applied; also that soon thereafter Moriarity got on the engine and found sufficient fire and steam with which to freely move it. The plaintiff says he saw no hand brake, and that it was usual to have the wheel of the hand brake off when the engine was being controlled or was supposed to be controlled by the air brakes. The defendant also contended that plaintiff was negligent in not properly handling the engine, it being supplied with fire, steam, and air brakes, all operative, and also that the plaintiff received his injuries through the negligence of Moriarity, a fellow servant, in kicking the engine and letting it go without con-trol, knowing, as plaintiff said, that it was not supplied with steam sufficient to control its movements.

The plaintiff gave evidence tending to show that this roundhouse stood in a large yard of such extent that it could have been enlarged having the same number of stalls and in making the entrance to such stalls much wider; that the entrance to these stalls could have been made sufficiently broad by lessening the number; and that the con-struction was faulty and negligent in not constructing the roundhouse with a wider entrance to the stalls. It is self-evident, I think, and the defendant substantially conceded, that by lessening the number of stalls in this roundhouse the width of the openings thereto could have been sufficiently increased to permit the passage of the body of a man between the side of the engine and the posts to which the doors were hung; that by enlarging the roundhouse the same number of stalls could have been provided with similar but wider entrances. The negligence of the defendant, if any, consisted in not exercising reasonable care to provide a reasonably safe place for the plaintiff to work in performing the duties devolved upon him. Whether or not defendant was negligent in this regard depends, it seems to me, upon the question whether the defendant in the exercise of such care ought to have foreseen that this or similar accidents might occur, that this or similar emergencies or situations might arise, and in not pro-

viding for the safety of its employés on such occasions or happenings or in such emergencies by making the entrance to the stalls of its roundhouse sufficiently wide. The defendant gave evidence tending to show that this was the usual construction of such roundhouses on this and other roads; that the entrances to these stalls were as wide as or wider than those in roundhouses used for the same purpose on other roads. There was no evidence that a similar accident had happened at this roundhouse or at any roundhouse on defendant's road or on any other railroad. The defendant also claimed that as plaintiff was familiar with defendant's roundhouse at Hopewell Junction, where the entrances were no wider, and he had seen this roundhouse as well as others, he knew the construction of such roundhouses, and that he assumed the risks of such construction, such risks being as obvious and open to him as to the defendant company. The plaintiff contends that, even if Moriarity was a fellow servant and negligent, and his negligence was one of the proximate causes of plaintiff's injury, there was another proximate and concurring cause, to wit, the concurrent negligence of the defendant company in not foreseeing that this or similar accidents or occurrences might happen, and in not providing against them. The plaintiff says that he had the right to assume that the defendant had fully discharged its duty to him by exercising due care to provide a reasonably safe place, and that, even if the defendant had a negligently constructed roundhouse at Hopewell's station, he had the right to assume that the one at East Hartford was properly constructed and safe.

The court charged the jury that negligence of the defendant could not be inferred or found from the mere fact that an accident happened and injury resulted, and that the burden of proving negligence was on the plaintiff (Patton v. Texas, etc., R. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361); also, that Moriarity, who kicked or shoved the engine on which plaintiff was at work, was, at the time, engaged in such work and in performing such duties that he was a fellow servant or co-employé of plaintiff, and that plaintiff could not recover if Moriarity's negligent act, if it was negligent, was the sole cause of the injury; also, that even if Moriarity was negligent in kicking the engine the plaintiff could recover if they found the defendant was also negligent in not exercising reasonable care to provide a safe place for the plaintiff to work, and such negligence was a concurring cause in producing the accident and injury, and plaintiff was free from contributory negligence, and had not assumed the risks of the situation. It was left to the jury to determine and say on the evidence whether or not defendant was negligent in not apprehending or foreseeing that occasion might and probably would arise making it necessary for the person taking engines into these stalls to leave the cab and be on the side of the engine while it was in motion, or descend to the ground, and so be in danger of coming in contact with these posts, and in not providing against such danger of accidents and injury by providing a wider entrance to the stalls. On this subject the court charged:

"It is claimed that the defendant company was negligent in not foreseeing, not this particular contingency or situation, but similar contingencies, and

providing against them by making the opening wider. That is, it is claimed that this was not a safe place for the men who placed those engines to work, for the reason that the defendant company, in the exercise of reasonable care to provide a safe place, ought to have foreseen, and was negligent in not foreseeing, that some such contingency would arise where it would be necessary for the person in charge of the engine to get off or jump off and take care of the engine and take care of the property, or do something to properly place the engine. Now, gentlemen, there is the crux of this case: Was the defendant, the railroad company, negligent in not foreseeing that, not this particular contingency, but that a similar contingency, might arise, and in not providing against it by providing a wider entrance, so that in case the person in charge of the engine had occasion to leave it or get down from it, that he could ride on the side or be at the side of it, and not be injured by being pushed against that post?

"The defendant is not liable for accidents which a prudent man, in the exercise of ordinary care, could not ordinarily have foreseen. Could and should this defendant company, in the exercise of ordinary care, have foreseen that the persons or person in charge of its engines, in placing them in the stalls in the roundhouse, would have occasion to leave the cab and get down from or out on the side of the engine when in motion, and so come in contact with the posts or uprights at the entrance to such stalls? If it could, and should, and ought to have foreseen that, in the exercise of ordinary care, as I have defined, then it would be negligence of the company in not so providing a place for the workmen to be carried into or walk into where they would not be crushed in the manner referred to.

"In determining that question, you are to consider the situation, the nature and character of the duties to be performed—that is, by the person in charge of the engine—and the acts to be done in properly performing the duty of placing the engines in the roundhouse; the liability to happenings which would or might make it necessary for the person in charge of the engine to leave the cab and ride on the side of the engine, or to descend therefrom.

"The burden is on the plaintiff to establish negligence by a fair preponderance of evidence. You cannot find negligence from the mere fact that this accident happened. You must find that in the exercise of ordinary care, in the light of human experience, which you have a right to consider, and with knowledge of the duties required, the defendant ought to have foreseen that such or similar accidents would occur by the employé coming in contact with the posts or uprights, the employé being engaged in the discharge of the duties required of him.

"The defendant was not required to so construct its stalls as to make accidents impossible; it was not an insurer of its employés or of the safety of the place. The defendant is not liable for an accident and a consequent injury that could not be or would not be foreseen by an ordinarily prudent person exercising reasonable and ordinary care under all circumstances of the case, and in view of the duties to be peformed and the result to be accomplished and the risks to be encountered. But, gentlemen, if, on the other hand, an ordinarily prudent person in the exercise of reasonable care, in the light of human experience and the circumstances and the duties required, ought to have foreseen that such occurrences would be liable to happen, and that employés might be injured, then you can say that it was negligence not to provide for the safety of the employé in that regard by making the entrance wider."

"The master cannot escape liability for injuries to a servant on the ground that the injury was caused by the acts of a fellow servant, if there was concurrent negligence on the part of the master." Booth v. Boston, etc., 73 N. Y. 38, 29 Am. Rep. 97; Anthony v. Leeret, 105 N. Y. 591, 12 N. E. 561; Stringham v. Stewart, 100 N. Y. 516, 3 N. E. 575; Hough v. Railway Co., 100 U. S. 213, 218, 25 L. Ed. 612.

"Negligence only becomes a question of law to be taken from the jury when the facts are such that fair-minded men can only draw from them the inference that there was no negligence; and if, from the facts admitted or conflicting testimony, such men may honestly draw different conclusions as to the negligence charged, the question is not one of law, but of fact to be settled by the jury, under proper instructions." McDermott v. Severe, 202 U. S. 600, 604, 26 Sup. Ct. 709, 710, 50 L. Ed. 1162; Railroad Company v. Powers, 149 U. S. 43, 13 Sup. Ct. 748, 37 L. Ed. 642; Railroad Company v. Everett, 152 U. S. 107, 14 Sup. Ct. 474, 38 L. Ed. 373.

It was the duty of the defendant to exercise reasonable care to provide a reasonably safe place in which the defendant was to work, and if it failed in this duty, and the defendant had not assumed the risks of the situation, or been warned of the dangers, if unusual, not obvious, or unknown to him, and was injured in consequence of such negligence, then the defendant was liable. Choctaw, Oklahoma & Gulf R. R. Co. v. McDade, 191 U. S. 64, 67, 24 Sup. Ct. 24, 48 L. Ed. 96; Texas & Pacific Railway Co. v. Swearingen, 196 U. S. 51, 55, 57, 61, 62, 25 Sup. Ct. 164, 49 L. Ed. 382; Northern Pacific R. Co. v. Peterson, 162 U. S. 346, 353, 16 Sup. Ct. 843, 40 L. Ed. 994; Union Pacific Railway Co. v. O'Brien, 161 U. S. 451, 457, 16 Sup. Ct. 618, 40 L. Ed. 766; Benthin v. N. Y. C. & H. R. R. Co., 24 App. Div. 303, 48 N. Y. Supp. 503. This rule applies to permanent structures of the company as much as to movable ones, and appliances, and as well to the location thereof as mode of construction See cases cited. There are scores of cases holding the same.

In Choctaw, etc., v. McDade, supra, the Supreme Court of the United States held:

"It is the duty of a railroad company to use due care to provide a reasonably safe place and safe appliances for the use of workmen in its employ. It is obliged to use the same degree of care to provide properly constructed roadbed, structures, and track to be used in the operation of the road.

"The servant has a right to assume that the master has used due diligence in providing suitable appliances for the operation of his business, and does not assume the risk of the employer's negligence in making such provision."

At page 67 of 191 U. S., page 25 of 24 Sup. Ct. (48 L. Ed. 96), the court said:

"It is the duty of a railroad company to use due care to provide a reasonably safe place and safe appliances for the use of workmen in its employ. It is obliged to use ordinary care to provide properly constructed roadbed, structures, and track to be used in the operation of the road. Union Pacific Ry. Co. v. O'Brien, 161 U. S. 451, 16 Sup. Ct. 618, 40 L. Ed. 766."

In Union Pacific R. Co. v. O'Brien, supra, the same court said, page 457 of 161 U. S., page 620 of 16 Sup. Ct. (40 L. Ed. 766):

"The general rule undoubtedly is that a railroad company is bound to provide suitable and safe materials and structures in the construction of its road and appurtenances, and, if from a defective construction thereof an injury happen to one of its servants, the company is liable for the injury sustained. The servant undertakes the risks of the employment, as far as they spring from defects incident to the service, but he does not take the risks of the negligence of the master itself. The master is not to be held as guaranteeing or warranting absolute safety under all circumstances, but it is.

bound to exercise the care which the exigency reasonably demands in furnishing proper roadbed, track, and other structures, including sufficient culverts for the escape of water collected and accumulated by its embankments and excavations. Hough v. Railway Co., 100 U. S. 213, 25 L. Ed. 612; Texas & Pacific Railway v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829; Gardner v. Michigan Central Railroad, 150 U. S. 349, 359, 14 Sup. Ct. 140, 37 L. Ed. 1107; Union Pacific Railway v. Daniels, 152 U. S. 684, 14 Sup. Ct. 756, 38 L. Ed. 597; Chicago & Northwestern Railroad v. Swett, 45 Ill. 197, 92 Am. Dec. 206; Toledo & Peoria Railway v. Conroy, 68 Ill. 560; Stoher v. Iron Mountain Railway Co., 91 Mo. 509, 4 S. W. 389; Paulmier v. Erie Railroad. 34 N. J. Law, 151; Snow v. Housatonic Railroad Co., 8 Allen (Mass.) 441, 85 Am. Dec. 720; Huddleston v. Lowell Machine Shop, 106 Mass. 282; Smith v. New York & Harlem Railroad Co., 19 N. Y. 127, 75 Am. Dec. 305; Patterson v. Connellsville Railroad Co., 76 Pa. 389, 18 Am. Rep. 412.

"It is the duty of the company in employing persons to run over its road to exercise reasonable care and diligence to make and maintain it fit and safe for use, and, where a defect is the result of faulty construction which the employer knew or must be charged with knowing, it is liable to the employé, if the latter use due care on his part, for injuries resulting therefrom."

In Northern Pacific Railroad v. Peterson, supra, at page 353 of 162 U. S., page 845 of 16 Sup. Ct. (40 L. Ed. 994), the court said:

"He owes the duty to provide such servant with a reasonably safe place to work in, having reference to the character of the employment in which the servant is engaged. He also owes the duty of providing reasonably safe tools, appliances, and machinery for the accomplishment of the work necessary to be done. He must exercise proper diligence in the employment of reasonably safe and competent men to perform their respective duties, and it has been held in many states that the master owes the further duty of adopting and promulgating safe and proper rules for the conduct of his business, including the government of the machinery and the running of trains on a railroad track. If the master be neglectful in any of these matters. it is a neglect of a duty which he personally owes to his employés, and, if the employé suffer damage on account thereof, the master is liable."

In Texas & Pacific R. Co. v. Swearingen, supra, the court, at pages 61 and 62 of 196 U. S., page 167 of 25 Sup. Ct. (49 L. Ed. 382), said:

"This is apparent when it is borne in mind that the plaintiff testified, in substance, that prior to the accident he had not closely inspected the scale box or taken measurements of the distance from the box to the north rail of track No. 2, and that he did not do more than cursorily observe the structure from a distance, and that he was unaware of the nearness of the scale box to the north rail of track No. 2.

"Prima facie, the location of scales where the tracks were only the standard distance apart, and where a space of less than two feet was left for the movements of a switchman between the side of a freight car and the scale box, incumbered, as he would be in the nighttime, with a lantern employed for the purpose of signaling, did not incontestably establish the performance by the defendant company of the duty imposed upon it to use due care to provide a reasonably safe place for the use of the switchmen in its employ. And so far from the proof making it certain that the necessity of the situation required the erection of the structure between tracks Nos. 1 and 2 as existing, there was proof that the railway company owned unoccupied ground, intended for other tracks, to the south of track No. 4, justifying the inference that the distance between tracks Nos. 1 and 2 might have been increased, and the employment of the scales thus rendered less hazardous to switchmen, or that the scales might have been removed to a safer location.

"It was, therefore, properly a question for the determination of the jury whether or not the scales were maintained in a reasonably safe place, and,

if not, whether the plaintiff had notice thereof. The Court of Appeals was of opinion, and rightly, we think, that the dangerous contiguity of the scale box to track No. 2, and the extra hazard to switchmen resulting therefrom, was not so open and obvious on other than a close inspection as to justify taking from the jury the determination of the question whether there had been an assumption of the risk. The plaintiff was entitled to assume that the defendant company had used due care to provide a reasonably safe place for the doing by him of the work for which he had been employed, and, as the fact that the defendant company might not have performed such duty in respect to the scale box in question was not so patent as to be readily observable, the court could not declare, in view of the testimony of the plaintiff as to his actual want of knowledge of the danger, that he had assumed the hazard incident to the actual situation. Choctaw, O. & G. R. R. v. McDade, 191 U. S. 64, 68, 24 Sup. Ct. 24, 48 L. Ed. 96."

It appeared from the evidence that defendant might easily have placed the posts wider apart—made the entrances wider. It was shown that when engines came in from off the road or from work they were stabled in this building, and so placed both night and day; that sometimes they were more or less disabled, as everybody knows. It appeared that the hostler in the line of his duty was required to go in and out of these stalls with an engine many times each day and night, and that, if anything occurred making it necessary for the hostler to get down from the engine after leaving the turntable and while it was on its way into the stall, he was liable to come in contact with the post or stanchion. True, his place, ordinarily, was in the cab, but it is readily seen that occasion may arise for the hostler to leave the cab and get down from the engine while it is in motion and on its way into the stall. This will be the case with any engine being placed in its stall if out of repair so the brakes, whether operated by hand or by steam, will not work after the engine is put in motion. In such case, as the engine cannot be stopped by steam, or air, or by hand, but can be by blocking, it would be the duty of the hostler to block it and prevent it running off the tracks into the side of the building, and necessary for him to leave the engine to perform that duty, or to save himself from injury by being carried into and perhaps through the walls of the roundhouse, where the cab would be smashed and injury done to whoever occupied it. In such case it might be necessary for the hostler to put his head out, even if he did not leave the cab. Should not the defendant company have foreseen and provided against such happenings? I can see no difference in principle between this case and those where structures are placed so near the tracks that there is not room for the engineer and trainmen having duties to perform, in emergencies, on the outside of the engine or cars, or by putting their heads outside, to safely pass such structures when the train is in motion. True, the liability to accidents and consequent injury is not as frequent in the former case as in the latter, but they are just as sure to happen and may be as readily apprehended and foreseen in the one case as in the other. The darkness, the smoke, and steam in these sections and stalls, the absence of bumpers to prevent the engines from running off the tracks and into the walls of the building, the failure of steam to work the air pumps, the liability of the air pumps and brakes to get out of order and fail to work, the necessity for pushing a disabled engine from

the turntable into its stall, the necessity for the hostler to leave the cab and alight from the engine in such cases, etc., were all known quantities in railroading. They were not possible occurrences and contingencies merely, but probable, though rare, happenings and conditions.

In 26 Cyc. 1130, 1131, 1132, it is said:

"A railway company is bound to exercise reasonable care and diligence to prevent obstructions or erections on, over, or near its tracks which are a source of danger to its servants, and will be held liable for injuries occasioned by its neglect of duty. * * *

"If a railway company knowingly maintains or permits a bridge over its track so low that brakeman cannot perform their duties on the top of the cars with reasonable safety, it is liable to a brakeman who, having no knowledge of the dangerous character of the bridge, is struck by it and injured while in the performance of his duty."

Here the defendant company is chargeable with notice that this was an unsafe place for hostlers to work, provided, in the exercise of reasonable care, it ought to have known or foreseen that in the discharge of their duties they might or probably would have occasion to ride into the stalls on the side of the engines, or to alight therefrom while on their way from the turntable into the stalls.

It can hardly be contended that the defendant was guilty of want of reasonable care in not foreseeing and providing against "improbable" occurrences. The defendant was bound, however, to foresee and provide against all probable contingencies. Sheehan v. N. Y. C. & H. R. R. R. Co., 91 N. Y. 332, 339: Latorre v. Central Stamping Co., 9 App. Div. 145, 150, 41 N. Y. Supp. 99; 26 Cyc. 1144, 1145. In Sheehan v. N. Y. C. & H. R. R. R. Co., supra, the court said:

"The law does not exact absolute certainty, but, when life is at stake, it demands that care shall be taken to provide so far as is possible against all contingencies."

In Latorre v. Central Stamping Co., supra, the court, per Cullen, now Chief Judge of the Court of Appeals, said:

"The fact that no previous accident of this character had happened does not relieve the master from liability, provided the accident was such that the probability of its occurrence might reasonably have been foreseen. We think this accident of such a character. The danger of igniting the turpentine from inserting the heated metal was one that should have been anticipated by a person having the technical knowledge on the subject that the master must have possessed."

In 26 Cyc. 1144–1146, it is said:

"While there is a presumption that a master, having knowledge of defects in the place for work, or in the machinery or appliances, has knowledge of the consequences which may result therefrom, and will be held liable for injuries to a servant resulting from known or probable dangers, yet he is not liable for the result of hidden or improbable dangers, of which he did not have, and, by the exercise of reasonable care, could not obtain, knowledge. But facts which do not necessarily operate to charge a servant with notice of the danger arising from the defective condition of machinery may operate to charge the master with such notice, since the obligation upon each arising from the mere knowledge of the defective condition is not alike. * * *

"To render a master liable for an injury to a servant, caused by a defect in the place of work, or in the machinery or appliances, it is not necessary that the master should have had actual knowledge of the defect, but it is

sufficient to show that he could have discovered it by the exercise of reasonable, proper, and ordinary care and diligence in performing, the duties of master."

I am of the opinion there was sufficient evidence in this case to take the question to the jury whether defendant was negligent in not foreseeing, if it did not foresee, the danger to its employés engaged in taking engines into and out of these stalls, under the conditions that existed there, and in not providing against such danger by making the entrances to the stalls wider, or by giving warning of the danger to be encountered. Of express notice or warning of the danger there was no pretense. On the trial the defendant relied on the facts that the plaintiff had been in this roundhouse; had safely taken engines into these stalls during the night, and must have become familiar with · the situation; and had worked as hostler, off and on, at Hopewell Junction, where the entrances were no wider than at East Hartford. All this was for the jury to consider, but was not conclusive of the questions at issue. In Benthin v. N. Y. C. & H. R. R. R. Co., 24 App. Div. 303, 48 N. Y. Supp. 503, frequently cited and approved, the railroad company had erected a telegraph pole on its own lands 49 inches from the track, measuring on the ground, but because of its leaning over towards the tracks such pole was only 4 inches from the side of the passing locomotive upon which the deceased, a fireman, stood at a point at the height of his head. There was unoccupied land upon which the pole might have been set 12 or 13 feet away from the track. The fireman had previously passed this pole on many occasions, and his proper place on the engine under the rules of the defendant company was on the left-hand side of the engine. When, struck by the pole the fireman was on the right-hand side of the engine, where he had gone for the purpose of looking out to ascertain, whether a journal on a car was smoking. While in this position the fireman was killed by his head coming in contact with such pole. No accident of this nature had happened at this place, or at any place on the road, so far as the proof showed. The court held that the defendant company had not performed its duty to exercise due care to furnish a reasonably safe place for its employés to perform their duties, that the deceased did not assume the risks and that he was not guilty of contributory negligence as matter of law. The court said:

"It is urged that the intestate had passed this pole on many previous occasions. This is undoubtedly true. But whether he was negligent in not knowing how near to the track it stood, and bearing in mind the location of the pole and the train at the time he looked, was a question of fact for the jury. * * * Whether the night of the accident was so foggy and dark that objects could not be distinctly seen for any considerable distance was a disputed fact."

In Wallace v. C. V. R. R. Co., 138 N. Y. 302, 33 N. E. 1069, it was held that:

"A brakeman on top of a moving train, as matter of law, is not chargeable with negligence simply because he does not constantly bear in mind the precise location where his train and where every bridge over the track is."

In that case the plaintiff, a brakeman, while standing on top of a freight car on a moving train, was struck by a low bridge and injured.

At the time he was watching the train to see that it did not break. The court said:

"At the time of the accident he was upon a very long train, intent upon the discharge of his duty, with his face toward the rear of the train, in a position to most effectually discharge his duty, and thus his back was toward the bridge. He was not at the time aware that he was approaching a place of danger, and had no warning of the bridge. Indeed, the bridge was not in his mind, and the trial judge nonsuited him because he did not at the time have the bridge in his mind and thus guard himself against the danger of injury.

"We do not think that one thus situated can, as matter of law, be charged with negligence because he did not take notice of the fact that he was approaching the bridge, and thus know that he was in a place of danger. He was in a place where there was danger that the train might break in two, and he was intent upon the discharge of his duty. It cannot be said that a brakeman is, as matter of law, careless because he does not bear constantly in mind the precise location where the train is and where every bridge is."

In Kane v. Northern Central Railway, 128 U. S. 91, 9 Sup. Ct. 16, 32 L. Ed. 339, it was held that whether an employé is guilty of contributory negligence, in a case where he knew of the defect in the car in the use of which he was injured, was for the jury, and that in determining the question of negligence "regard must always be had to the circumstances of the case and the exigencies of his position." The court said:

"But in determining whether an employé has recklessly exposed himself to peril, or failed to exercise the care for his personal safety that might reasonably be expected, regard must always be had to the exigencies of his position, indeed to all the circumstances of the particular occasion. In the case before us, the jury may not unreasonably have inferred from the evidence that, while the plaintiff was passing along the tops of the cars for the purpose of reaching his post, he was so blinded or confused by the darkness, snow, and rain, or so affected by the severe cold, that he failed to observe, in time to protect himself, that the car from which he attempted to let himself down was the identical one which, during the previous part of the night, he had discovered to be without its full complement of steps."

In Young v. Syracuse, B. & N. Y. R. R. Co., 45 App. Div. 296, 61 N. Y. Supp. 202, a switch had been misplaced. The switch was located some 15 or 20 feet south of a water tank and near the track. By reason of its location, the red light showing the switch to be misplaced was not visible to the engineer until his train was within 60 feet of the switch, and too near it to avoid a collision. There was evidence that the switch might have been located at another point so it would have showed the red light for a much greater distance without impairing its usefulness. The engineer had been in the employ of the company for a number of years and had frequently passed this place, and it was a rule of the company that engineers were to approach switches with great care and have their trains under such control as to avoid accidents in case a switch was misplaced. The engineer was killed. Held, it was error to dismiss the complaint; that it was for the jury to say whether defendant was guilty of negligence in locating the switch where it did, and, if so, whether this negligence was an efficient proximate cause of the accident, and whether the engineer assumed the risk, and whether the engineer was guilty of

negligence in failing to have in mind the location of the switch and its character under all the circumstances of the case.

In Brown v. N. Y. C. & H. R. R. R. Co., 42 App. Div. 548, 59 N. Y. Supp. 672, a mail crane was so placed that its bow extended within seven inches of a passing locomotive. It was shown that it could have been placed at a greater and safe distance from the tracks without interfering with its successful operation. The plaintiff's intestate, a fireman, on a passing locomotive, engaged in the performance of his duty and not unfamiliar with the place, was struck by the crane and killed. Held, that the question of defendant's negligence in locating and maintaining the crane, as well as that of the negligence of plaintiff's intestate, were for the jury. The court also held that the fireman engaged in the discharge of his duty might easily have forgotten the location or failed to have observed it, while engaged in the performance of his duties and distracted thereby, without being charged with such negligence as would defeat a recovery.

To the same effect is the case of Fitzgerald v. N. Y. C. & H. R. R. R. Co., 37 App. Div. 127, 55 N. Y. Supp. 1124, also True v. Niagara Gorge Railroad Co., 70 App. Div. 383, 75 N. Y. Supp. 216. In this last-cited case the plaintiff was a conductor on defendant's road engaged in collecting fares, and while so doing was standing upon the running board of the car. He was swept therefrom by another car of defendant passing in the opposite direction, and injured. The tracks could have been placed further apart. The plaintiff had been on this route for 30 days, making 15 trips daily. Held, that he was entitled to recover; that the question of defendant's negligence in placing its tracks so close together at the point where the accident occurred, and the questions of plaintiff's negligence and assumption of the risk, were for the jury.

Choctaw, O., etc., R. R. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96, was the case of a dangerous structure so near to the tracks and passing cars of a particular kind that it was dangerous to employés on the cars. It could have been placed further away. The court said:

"Be this as it may, the testimony makes it clear that in the proper construction of this appliance there is no necessity of bringing it so near to the car as to endanger brakemen working thereon. Whether hung at an angle or not, it can be so constructed as to leave such space between it and the top of the car as to make it entirely safe for brakemen in passing. * * * Where no necessity exists, as in the present case, for the use of dangerous appliances, and where it is a matter requiring only due skill and care to make the appliances safe, there is no reason why an employé should be subjected to danger wholly unnecessary to the proper operation of the business of the employer. Kelleher, Adm'r v. Milwaukee & Northern R. R. Co., 80 Wis. 584, 50 N. W. 942; Georgia & Pacific Railway Co. v. Davis, 92 Ala. 300, 9 South. 252, 25 Am. St. Rep. 47; 1 Shearman & Redfield on Negligence (5th Ed.) § 201, and cases cited. * * * It is a case where the dangerous structure is not justified by the necessity of the situation, and we agree with the judgments in the courts below that its maintenance under the circumstances was negligence upon the part of the railroad company. The court, having left to the jury to find the fact as to whether McDade was killed by the obstruction, did not err in giving instruction that the negligent manner in which the waterspout was maintained was, of itself, a conviction of negligence."

In Texas & Pacific Railway Co. v. Swearingen, 196 U. S. 51, 57, 25 Sup. Ct. 164, 49 L. Ed. 382, from which I have already quoted, a scale box, 6 feet high, 5 feet wide, and 18 inches deep, a permanent structure of the standard size and location, had been erected and was maintained at a distance of 19½ inches from track No. 2 in the yard. There were other tracks, but they could have been placed further apart, and the scale box at a greater distance from the track in question. The scale box was erected several years before the accident in question, and there was no evidence of prior accidents at this place. The plaintiff testified:

"I knew we had to pass the scale box at the time I was hurt, so as to get to the switch beyond. I was not thinking about it, and I did not see it when we passed it in going after these cars. * * * There was nothing to hide the scale box from my view; it was perfectly open and apparent."

The accident happened after dark, but there was a light on the engine on which the plaintiff was riding. The plaintiff also testified:

"I was never warned about the danger of getting knocked off the cars by the scale box, and at the time I was hurt I was attending to my work and thinking about my duties and looking for a signal from the yardmaster, and was not thinking about the box. I did not see it immediately prior to the time I struck it."

He had worked there for some considerable time. There, as here, it was contended that the defendant company was not negligent in its construction, but the court held, as we have seen by the quotations from the case, made earlier in this opinion, that, as there was evidence that the tracks could have been placed further apart and the scale box further from track No. 2, the question of negligent construction and location was properly for the jury. The court also held that the questions of assumption of the risk and negligence of the plaintiff were for the jury. That case is controlling here, and much stronger for the defendant company in every aspect, except that there employés, at times, were expected to ride on the side of the moving engine or cars, while here the hostler was not expected to be on the side of the engine or tank while going into the roundhouse, except in emergencies making that course necessary or proper. In the light of the evidence and experience in railroading and in moving engines and cars, it was for the jury to say whether or not the defendant company reasonably might and should have apprehended the necessity of leaving the cab. Of course, the case would have been stronger for the plaintiff had he been able to show prior occurrences of this kind at such places. But, as said by Chief Judge Cullen, while the happening of prior accidents at a given place is strong evidence that a defendant knew or had reason to apprehend the dangers of the situation, still the absence of proof that an accident has happened there is not conclusive proof of the safety of the place or of the absence of negligence in constructing and providing it. I take it that, where a given place proves to be dangerous, the absence of a prior accident and injury at that place does not exonerate the master from liability for the first one that does occur. It becomes a question whether the master in the exercise of reasonable care and forethought ought to have known the danger. So, in determining whether or not this roundhouse was

a dangerous place for the plaintiff to work, the defendant company could not rely on the fact, if it be a fact, that no accident had happened there before, but was bound to consider whether or not contingencies were liable to arise making it necessary or proper for the hostler to leave the cab and be on the outside or alight from the engine while on its way into the stall. If, in the exercise of reasonable care, defendant might have foreseen such necessity, then the place was to the defendant obviously a dangerous one for the hostler to work in.

In Abel v. D. & H. C. Co., 103 N. Y. 581, 9 N. E. 325, 57 Am. Rep. 773, the defendant was held guilty of negligence in not foreseeing that cars might be backed against others standing on a side track and undergoing repairs, and thereby endangering the lives of workmen engaged underneath same, and in failing to make and promulgate a rule for the protection of such workmen.

In McCoy v. N. Y. C. & H. R. R. Co., 185 N. Y. 276, 77 N. E. 1174, the court held and applied the same doctrine for the protection of the hoer whose duty it is to remove the ashes from the ashpan of the locomotive by holding defendant liable for not promulgating a rule that the person in charge of the engine should not move it until he actually saw that the hoer was in a place of safety. This decision was based on the proposition that it was the duty of the defendant company to foresee that the engine might be moved and injury result.

In Berrigan v. N. Y., L. E. & W. R. Co., 131 N. Y. 582, 30 N. E. 57, the Court of Appeals laid down the rule that a railroad company is only bound, in making and promulgating rules, "to anticipate and guard against such accidents and casualties as may reasonably be foreseen by its managers exercising ordinary care."

In Mendizabal v. N. Y. C. & H. R. R. Co., 89 App. Div. 386, 388, 85 N. Y. Supp. 896, 897, the court said:

"Experience shows that animals may stray upon a railroad track, and that if they do there is danger that a train may come in collision with them and be wrecked. Adequate measures, reasonable in their nature, must be taken to guard against such danger."

Without going into the numerous cases, it seems to me sufficient that it is common knowledge in railroading that engines and their brakes get out of order; that they sometimes fail to work or hold; that the fires in engines get low or go out, so that steam fails, and that in such cases the air pumps and brakes will not work; that engines put in motion by some exterior force need to be under control, and that it is dangerous to engine, engine house, and hostler to have them run into their stalls if not under full control, and that in such a contingency it would be both necessary and proper for the hostler to leave the cab and engine and use every effort to stay its progress. It seems to me that this, or a similar occurrence, was one which .1 the exercise of reasonable care might have been foreseen, and one which ought to have been foreseen or apprehended. The defendant knew of the smoke and steam and narrow entrances to these stalls, and that it would be extremely dangerous for the hostler to be on the outside of the cab, or to descend from the engine while on its way in. The dangerous character of railroad business demands especial care and caution on

the part of the railroad company in the construction of its tracks, etc., and it is bound to a degree of care proportionable to the dangers to be encountered. Patton v. Texas, etc., R. Co., 179 U. S. 658, 664, 21 Sup. Ct. 275, 45 L. Ed. 361.

I am satisfied that the evidence was such as to justify the jury in finding that the defendant was negligent; that plaintiff was not negligent; that plaintiff had not assumed the risk of the place in which he was required to work; and that, while the negligence of Moriarity in setting the engine in motion was one cause of the accident and injury, the actual, efficient, proximate, and concurring cause was the negligence of the defendant company.

The motion to set aside the verdict and for a new trial is therefore denied.